ACCEPTED
13-13-00369-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
12/29/2014 5:31:16 PM
DORIAN RAMIREZ
CLERK

In the Court of Appeals for the
Thirteenth District of Texas

| | | |
|---|---|---|
| **JOSE ANGEL LERMA,** | § | |
| Appellant | § | |
| | § | |
| v. | § | **No. 13-13-00369-CR** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| Appellee | § | |

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
12/29/2014 5:31:16 PM
DORIAN E. RAMIREZ

Trial Number 219-81913-2012, in the 219th District Court
Collin County, Texas.
The Honorable Scott J. Becker, Judge Presiding.

———————————

## STATE'S BRIEF

———————————

**GREG WILLIS**
Criminal District Attorney
Collin County, Texas

**JOHN R. ROLATER, JR.**
Assistant Criminal District Attorney
Chief of the Appellate Division

**LIBBY J. LANGE**
Assistant Criminal District Attorney
2100 Bloomdale Rd., Suite 200
McKinney, Texas 75071
(972) 548-4323
FAX (214) 491-4860
State Bar No. 11910100
llange@co.collin.tx.us

**LAUREN HOPKINS**
Assistant Criminal District Attorney

*Oral argument is not requested,
unless Appellant requests argument.*

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................i

INDEX OF AUTHORITIES...................................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ...............................................1

STATEMENT OF THE CASE....................................................................................1

STATEMENT OF FACTS ..........................................................................................1

SUMMARY OF THE STATE'S ARGUMENTS.......................................................7

STATE'S REPLY TO APPELLANT'S FIRST ISSUE
   (The evidence was sufficient to prove DWI)...........................................................8

The evidence is sufficient to support Appellant's conviction for driving while intoxicated. Appellant exhibited classic signs of intoxication, the field sobriety tests indicated he was intoxicated, and he refused to provide a breath or blood sample. The jury was free to disbelieve Appellant's alternative explanations for his behavior.

   Standard of Review................................................................................................8

   Analysis..................................................................................................................9

STATE'S REPLY TO APPELLANT'S SECOND ISSUE
   (The indictment provided sufficient notice) ........................................................14

Because Appellant failed to object to, or file a motion to quash, the indictment before trial, he cannot now complain that his indictment was defective because it failed to define "intoxication." In any event, the definitions of "intoxicated" are evidentiary matters that need not be alleged in the indictment, and Appellant's indictment satisfied constitutional notice requirements, such that he was aware of the charges against him and could prepare a defense.

   Appellant did not preserve error ........................................................................14

The indictment was not defective ...........................................................................15

PRAYER ..................................................................................................................17

CERTIFICATE OF SERVICE ...............................................................................18

CERTIFICATE OF COMPLIANCE ......................................................................18

# INDEX OF AUTHORITIES

**Constitutions, Statutes, Codes, and Rules**

TEX. CODE CRIM. PROC. art. 1.14(b) ................................................................14

TEX. CONST. art. I, § 10................................................................................15

TEX. PENAL CODE § 49.01(2)(A) ....................................................................9

TEX. PENAL CODE § 49.04(a) ....................................................................9, 15

TEX. PENAL CODE § 49.09(b)(2) .....................................................................1

Tex. R. App. P. 33.1................................................................................4

TEX. TRANSP. CODE § 724.015.........................................................................3

U.S. CONST. AMEND. VI .................................................................................15

**Cases**

*Bartlett v. State*,
270 S.W.3d 147 (Tex. Crim. App. 2008).............................................................12

*Brooks v. State*,
323 S.W.3d 893 (Tex. Crim. App. 2010).............................................................8

*Cotton v. State*,
686 S.W.2d 140 (Tex. Crim. App. 1985).............................................................9

*Crenshaw v. State*,
378 S.W.3d 460 (Tex. Crim. App. 2012).............................................................15

*Crouse v. State*,
441 S.W.3d 508 (Tex. App.—Dallas 2014, no pet.)............................................13

*Dodson v. State*,
No. 05-13-00297-CR, 2014 WL 429337 (Tex. App.—Dallas Feb. 3, 2014, no pet.) (not designated for publication) ...................................................................12

*Jackson v. Virginia*,
443 U.S. 307 (1979) .........................................................................................8

*Kirsch v. State*,
306 S.W.3d 738 (Tex. Crim. App. 2010) ........................................................9

*Maldonado v. State*,
No. 02-13-00076-CR, 2014 WL 670745 (Tex. App.—Fort Worth Feb. 20, 2014, no pet.) (not designated for publication) .............................................................12

*Russell v. State*,
290 S.W.3d 387 (Tex. App.—Beaumont 2009, no pet.).............................. 12, 13

*State v. Barbernell*,
257 S.W.3d 248 (Tex. Crim. App. 2008) ..................................................... 15, 16

*State v. Carter*,
810 S.W.2d 197(Tex. Crim. App. 1991), *overruled by State v. Barbernell*, 257 S.W.3d 248 (Tex. Crim. App. 2008) ...........................................................15

*State v. Cordell*,
34 S.W.3d 719 (Tex. App.—Fort Worth 2000, pet. ref'd) .................................15

*State v. Villarreal*,
No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014) ...............4

*Studer v. State*,
799 S.W.2d 263 (Tex. Crim. App. 1990) ...........................................................14

*Teal v. State*,
230 S.W.3d 172 (Tex. Crim. App. 2007) ...........................................................14

*Wesbrook v. State*,
29 S.W.3d 103 (Tex. Crim. App. 2000) ...............................................................9

*Williams v. State*,
  235 S.W.3d 742 (Tex. Crim. App. 2007) ...............................................................9

*Zill v. State*,
  355 S.W.3d 778 (Tex. App.—Houston [1st Dist.] 2011, no pet.)........... 10, 11, 13

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument, as it is not requested by Appellant.

## STATEMENT OF THE CASE

A jury found Appellant Jose Angel Lerma guilty of the third-degree-felony offense of driving while intoxicated.[1]  CR 75, 76; 3 RR 177.  Pursuant to the parties' agreement, the trial court sentenced Appellant to ten years in prison, suspended his sentence, and placed him on community supervision for seven years. CR 76; 3 RR 178-80.

## STATEMENT OF FACTS

At approximately 1:00 a.m. on May 26, 2012, Marc Miscuraca was driving northbound on the service road of Highway 121 (the Sam Rayburn Tollroad), when he saw a silver Acura ahead of him driving "erratically."  3 RR 20-21.  The driver was swerving in and out of his lane, and he eventually hit a curb, which either knocked off one of his tires or caused it to go flat.  3 RR 3 RR 21.  When Miscuraca saw a Department of Public Safety Trooper parked at a nearby gas station, he pulled over, and reported a possible drunk driver to Trooper Matthew Kasenic.  3 RR 22.

---

[1] Appellant stipulated to two prior DWI convictions.  *See* Tex. Penal Code § 49.09(b)(2); 3 RR 128, 136; SX 12.

1

As Trooper Kasenic set out to investigate, he saw a fellow trooper, Trooper Clayton Platt, pursuing the car with his lights and police siren activated. 3 RR 90-92. He also noticed that the suspect's front driver's-side tire was missing, causing sparks to fly everywhere and creating a loud, grinding noise. 3 RR 92-93. As Trooper Kasenic joined the pursuit, he could see that the driver was staring straight ahead, with both hands on the steering wheel, giving no indication that he needed help. 3 RR 93. Because the suspect continued driving, Trooper Platt turned on his loud speaker and ordered him to stop. 3 RR 30.

A short time later, the suspect—later identified as Appellant—pulled over. The troopers drew their weapons for officer safety, and Trooper Kasenic commanded Appellant to exit the car.[2] 3 RR 31-32, 94. Appellant complied but seemed "pretty confused." 3 RR 94. Trooper Kasenic holstered his weapon, and Trooper Platt ordered Appellant to get on the ground. 3 RR 32, 94. When Appellant did not comply, Trooper Kasenic put him on the ground and placed him in handcuffs. 3 RR 32, 95. The troopers then helped him up off the ground and read him his *Miranda* rights. 3 RR 33. Appellant told them that he had been at a bar, was heading to his home in Lewisville "right down the street," and that he had stopped to put air in his tire. 3 RR 33, 95. The troopers knew, however, that

---

[2] The recording of the stop was admitted into evidence and played for the jury. 3 RR 50, 108; SX 1.

2

Appellant was over twenty miles from Lewisville, that he was heading in the wrong direction, and that his front left tire was missing. 3 RR 56, 73, 91, 97. Trooper Platt noticed a strong smell of alcohol coming from Appellant's breath, that Appellant had "really glassy" eyes, and that he appeared not to understand their directions. 3 RR 33. Trooper Kasenic detected a strong odor of alcohol on Appellant's breath and noticed that his speech was slurred. 3 RR 95. Appellant said that he had been experiencing flu-like symptoms that day. 3 RR 39, 49.

The troopers decided to pursue a DWI investigation, and Trooper Kasenic secured the scene while Trooper Platt administered field sobriety tests to determine whether Appellant was intoxicated. 3 RR 66, 98, 102-03. Trooper Platt administered the horizontal gaze nystagmus (HGN) test and had Appellant perform the walk and turn and the one-legged stand tests. 3 RR 38-41, 42-46. Appellant showed signs of intoxication on all three tests. 3 RR 41, 44, 46, 47. Based on everything he had seen, Trooper Platt determined that Appellant did not have the normal use of his mental and physical faculties due to the introduction of alcohol into his body, and he arrested Appellant. 3 RR 47-49.

Trooper Platt placed Appellant in the front seat of his patrol car, read him the DIC-24 statutory warnings,[3] and requested that he give either a blood or a

---

[3] These warnings set out the penalties associated with refusing to provide a blood or breath sample. *See* Tex. Transp. Code § 724.015.

breath sample. Appellant refused both. 3 RR 51-52. Because Appellant had twice before been convicted of DWI, Trooper Platt took Appellant to a hospital for a mandatory blood draw.[4] 3 RR 52.

The blood-draw results showed that Appellant's blood alcohol level was .063 grams of alcohol per 100 millileters of blood approximately one hour and 45 minutes after the stop. 3 RR 54, 110, 114-15, 118; SX 10, 13. A person with an alcohol level of .08 or more satisfies the legal definition of intoxication. 3 RR 115. Although Troopers Platt and Kasenic expected Appellant's blood alcohol level to be "pretty high," Appellant's blood-alcohol results did not change their opinion that Appellant had been driving while intoxicated due to the ingestion of alcohol. 3 RR 74, 81, 104. While Trooper Platt agreed on cross-examination that he had only had "very basic" first-responder training in identifying stroke symptoms or neurological disorders, he disagreed that the symptoms for those medical conditions were "very similar" to symptoms of intoxication. 3 RR 80.

Forensic scientist Andrew Macy, who tested Appellant's blood sample, testified that, according to the National Safety Council's Committee on Alcohol and Other Drugs, anyone with an alcohol blood-alcohol level of .08 will have lost the normal use of his or her mental and physical faculties due to alcohol but that

---

[4] Appellant has not previously challenged the legality of the blood draw and therefore has forfeited any relief on this issue. *See State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014) (holding that mandatory blood draws are unconstitutional). *See* Tex. R. App. P. 33.1. In any event, the record makes clear that Appellant strategically relied on the 0.063 blood-draw result to assert his innocence. 3 RR 18-19, 123, 167-70.

4

some people will have lost it with a blood-alcohol level as low as .05 and maybe even lower. 3 RR 123. After discussing absorption and elimination rates and retrograde extrapolation, Macey stated that Appellant's blood alcohol concentration at 3:00 a.m. could have been higher, lower, or the same at 1:15 a.m., when Appellant was driving. 3 RR 116-17, 121. Macey could not say one-hundred percent whether Appellant's alcohol level while he was driving was .08 or over, or under .06. 3 RR 123.

Forty-six-year-old Appellant testified that his behavior that night was due to medical issues. 3 RR 133-36, 148. He explained that he had gone to work the day before but that he had felt ill from flu-like symptoms that had persisted for the past two weeks. 3 RR 137. He went home after work but then went to a neighborhood bar in Lewisville to meet some friends. He was not sure what time he arrived, but it was late. 3 RR 139-40. He took three beers with him to the bar and drank either two or three of them. 3 RR 141. After a while, he began getting a "really massive" headache and feeling nauseous. His legs started to get kind of wobbly and shaky, and his eyes got "kind of blurry," and he could not focus. 3 RR 140, 154. He became confused. 3 RR 141. He left to go home, which was five to seven miles away, but he ended up in McKinney. 3 RR 141-42. He did not remember what happened after he left the bar that night. 3 RR 142, 147-48, 155.

Appellant testified that his blurred vision lasted for two or three days after his arrest and that his headaches lasted for close to three months. 3 RR 143-44. His general practioner prescribed antibiotics and a fever reducer for high blood pressure and a sinus infection. 3 RR 144. But his symptoms did not subside, and he eventually got insurance and went to see other doctors. He is now being treated for "[c]holesterol and high blood pressure" and for "possibly having an onset of a ministroke." 3 RR 146. On cross-examination, the State introduced Appellant's medical records. 3 RR 149-50; SX 16, 17. Although Appellant's testimony was not entirely clear regarding the content of the records, the State argued without objection in closing argument that the medical records did not contain any information about Appellant having a stroke.[5] 3 RR 175.

---

[5] Appellant's medical records are difficult to decipher, and Appellant did not at trial and does not now cite to any place in the records that supports his suggestion that he was suffering from a neurological disorder the night of the offense and that this disorder caused the loss of his mental and physical faculties.

# SUMMARY OF THE STATE'S ARGUMENTS

*State's Reply to Appellant's First Issue*:

The evidence is sufficient to support Appellant's conviction for driving while intoxicated. Appellant exhibited classic signs of intoxication, the field sobriety tests indicated that he was intoxicated, and he refused to provide a breath or blood sample. The jury was free to disbelieve Appellant's alternative explanations for his behavior, as it is the sole judge of the weight and credibility to be given to witness testimony and other evidence.

*State's Reply to Appellant's Second Issue*:

Because Appellant failed to object to or file a motion to quash the indictment before trial, he cannot now complain that his indictment was defective for failing to define "intoxication." In any event, the definitions of "intoxicated" are evidentiary matters that need not be alleged in the indictment, and Appellant's indictment satisfied constitutional notice requirements, such that he was aware of the charges against him and could prepare a defense.

## STATE'S REPLY TO APPELLANT'S FIRST ISSUE
### (The evidence was sufficient to prove DWI)

Appellant asserts that the evidence was insufficient to prove that he lost the normal use of his mental or physical faculties due to the introduction of alcohol because his behavior was easily explained by the medical conditions he was suffering at the time and because his blood alcohol concentration was below the legal limit. App. Br. 5, 10, 12.

The evidence is sufficient to support Appellant's conviction for driving while intoxicated, however. Appellant exhibited classic signs of intoxication, the field sobriety tests indicated he was intoxicated, and he refused to provide a breath or blood sample. The jury was free to disbelieve Appellant's alternative explanations for his behavior, as it is the sole judge of the weight and credibility to be given to witness testimony and other evidence.

**Standard of Review**

In determining the sufficiency of the evidence, the reviewing court considers all evidence in the light most favorable to the jury's verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The trier of fact is the sole judge of the weight and credibility given to witness testimony, and it is within the sole province of the jury to resolve any conflicts in the evidence.

8

*Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The reviewing court may not act as a "thirteenth juror" and reweigh the jury's determinations of the weight or credibility of the evidence. *Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

**Analysis**

A person commits the offense of driving while intoxicated (DWI) if he is intoxicated while operating a motor vehicle in a public place. *See* Tex. Penal Code § 49.04(a). "Intoxication" is defined alternatively in two ways: (1) subjectively—not having the normal use of mental or physical faculties by reason of the introduction of alcohol; or (2) objectively—having an alcohol concentration of 0.08 or more. *See* Tex. Penal Code § 49.01(2)(A). Here, the trial court's jury instructions authorized the jury to convict Appellant if it found that he was intoxicated under the subjective definition and that he had twice been convicted of DWI. CR 70-71.

The Court of Criminal Appeals has identified evidence that "would logically raise an inference that the defendant was intoxicated at the time of driving," including: erratic driving, slurred speech, glassy eyes, the odor of alcohol on the person's breath, admissions to drinking, and the inability to follow directions or perform field sobriety. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010); *Cotton v. State*, 686 S.W.2d 140, 142-43, 142 n. 3 (Tex. Crim. App. 1985).

The testimony of a police officer about a defendant's behavior and opinion that the defendant is intoxicated provides sufficient support to uphold a jury verdict. *See Zill v. State*, 355 S.W.3d 778, 785-86 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Based on several classic signs of intoxication, Trooper Kasenic believed Appellant had lost the normal use of his mental and physical faculties due to the ingestion of alcohol; specifically, Appellant appeared to be oblivious to the fact that he was driving on only three tires and that two marked vehicles with activated lights and sirens were following him, his speech was slurred, and his breath had a strong smell of alcohol. 3 RR 94-95, 103. Appellant's .063 test result did not change Trooper Kasenic's opinion that Appellant was intoxicated, and he had no reason to believe Appellant was suffering from a stroke or seizure that night. 3 RR 104.

Trooper Platt also witnessed recognized signs of intoxication, including Appellant's glassy eyes, the smell of alcohol on his breath, and his inability to follow directions or properly perform the field sobriety tests. 3 RR 32-33, 47. Trooper Platt specifically explained that the HGN tests he administered "certainly indicated intoxication." 3 RR 41. Before administering the HGN tests, Trooper Platt questioned Appellant to determine whether he was a good candidate. When he asked Appellant about any recent head injuries, Appellant said that he had hit

his head on the first-aid kit at his office, but he also indicated that it was no longer causing him any problems. 4 RR 38-39. Appellant did not complain of a headache or any other medical condition, other than flu symptoms. 3 RR 49-50. When the State asked Trooper Platt whether he could tell from this type of test whether a person had suffered a recent traumatic head injury, he stated that "[g]enerally, neurological issues can be seen," explaining that

> [t]he pupils are not equal size, or there's not equal tracking present because, basically, in the few rare cases that I've had that people don't have equal pupil size, it generally indicates that they either have a previous condition or have a condition that they don't know about. It could be something as serious as a brain tumor, or it could be something more minor that they've had for a long time.

3 RR 42. Trooper did not see any of those signs in Appellant; in fact, Trooper Platt had "every reason to believe" that Appellant was intoxicated due to the consumption of alcohol. 3 RR 41-42, 81. If Trooper Platt had thought Appellant was suffering from a medical condition, he would have called an ambulance. 3 RR 47.

In addition to the two troopers' consistent conclusions that Appellant had lost the normal use of his mental and physical faculties due to the ingestion of alcohol into the body (3 RR 48-49, 81), the trial court admitted a redacted version of the recorded encounter. 3 RR 50, 108; SX 1. Therefore, the jury could determine for itself whether Appellant's behavior appeared to be the result of a medical/neurological condition or due to intoxication. *See Zill*, 355 S.W.3d at 788;

11

*Russell v. State*, 290 S.W.3d 387, 397 (Tex. App.—Beaumont 2009, no pet.) ("[B]ecause the jury saw the videotape of the stop, it could draw its own conclusions from observing Russell's behavior in deciding whether he appeared intoxicated."). The jury also could have considered Appellant's refusal to take a breath or blood test as indicating consciousness of guilt. *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008).

While Appellant's blood-alcohol concentration (BAC) was under 0.08 at the time of the test, this fact is not dispositive and does not, without more, prove Appellant's innocence.[6] Indeed, the National Safety Council's Committee on Alcohol and Other Drugs has determined that some people will have lost the normal use of their mental and physical faculties due to alcohol with a blood-alcohol level as low as .05 and maybe even lower. 3 RR 123. And the subjective definition of intoxication covers this situation. Moreover, forensic scientist Macey testified that Appellant's 3:00 a.m. 0.063 BAC level could have been higher—up to .08 or .085—at the time he was stopped at 1:15 a.m., although it also could have been lower or the same. 3 RR 121-22.

---

[6] *See Dodson v. State*, No. 05-13-00297-CR, 2014 WL 429337, at *1-4 (Tex. App.—Dallas Feb. 3, 2014, no pet.) (not designated for publication) (holding DWI evidence sufficient, despite defendant's .063 and .058 blood-alcohol level two hours after the stop); *Maldonado v. State*, No. 02-13-00076-CR, 2014 WL 670745, at *1-5 (Tex. App.—Fort Worth Feb. 20, 2014, no pet.) (not designated for publication) (holding DWI evidence sufficient where defendant's breath samples registered at alcohol concentrations of .071 and .072).

Although Appellant presented alternative explanations for the admitted loss of his physical and mental faculties, it was the jury's function to resolve any conflicts in the evidence, and the jury was free to accept or reject any and all of the evidence presented by either side. *See Crouse v. State*, 441 S.W.3d 508, 515 (Tex. App.—Dallas 2014, no pet.). Thus, the jury was free to believe the troopers' testimony that Appellant appeared to be intoxicated due to the ingestion of alcohol and disbelieve Appellant's alternative explanation that a medical/neurological condition caused his erratic behavior. S*ee Zill*, 355 S.W.3d at 787 ("Although Appellant's behavior during the traffic stop may have been consistent with a head injury, her behavior also constitutes recognized evidence of intoxication."); *Russell*, 290 S.W.3d at 396-98 (holding sufficient evidence to support DWI conviction, despite Russell's contention that his behavior and symptoms were caused by hypolglycemia and diabetes).

For these reasons, the evidence was sufficient to support Appellant's conviction, and his first issue should be overruled.

**STATE'S REPLY TO APPELLANT'S SECOND ISSUE**
(The indictment provided sufficient notice)

Appellant asserts that his indictment was fatally defective because it failed to define "intoxication," and therefore, his conviction should be reversed and his case remanded for a new trial. App. Br. 13-16.

Because Appellant failed to object to or file a motion to quash the indictment before trial, he forfeited any complaint on this issue. Additionally, the definitions of "intoxicated" are evidentiary matters that need not be alleged in the indictment, and Appellant's indictment satisfied constitutional notice requirements, such that Appellant was aware of the charges against him and could prepare a defense.

**Appellant did not preserve error**

As Appellant acknowledges, he did not file a motion to quash the indictment or object to any "defect, error, or irregularity of form or substance" in the indictment before the trial commenced. App. Br. 13; *see* Tex. Code Crim. Proc. art. 1.14(b). Thus, he forfeited the right to object, and he "may not raise the objection on appeal or in any other postconviction proceeding." *Id.*; *see Teal v. State*, 230 S.W.3d 172, 176-77 (Tex. Crim. App. 2007) ("Texas law now requires the defendant to object to any error in the indictment before the day of trial and certainly before the jury is empaneled."); *Studer v. State*, 799 S.W.2d 263, 273 (Tex. Crim. App. 1990). Because Appellant failed to preserve error, this issue should be overruled.

14

**The indictment was not defective**

A criminal defendant is entitled to fair notice of the specific charged offense. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10. The charging instrument must convey this notice sufficiently so that the accused may prepare his defense. *See State v. Barbernell*, 257 S.W.3d 248, 250 (Tex. Crim. App. 2008).

A DWI indictment provides adequate notice when it sets out the elements of the offense, as it did in this case.[7] *See* Tex. Penal Code § 49.04; *Crenshaw v. State*, 378 S.W.3d 460, 465-66 (Tex. Crim. App. 2012). While "intoxication" is an element of DWI, its two alternative definitions—subjective and objective intoxication—are not. Indeed, these definitions are the means by which "'the State may *prove* intoxication, rather than alternate means of *committing* the offense.'" *Crenshaw*, 378 S.W.3d at 466 (quoting *Barbernell*, 257 S.W.3d at 256). Thus, "the State may simply allege that a person was 'intoxicated' to satisfy the notice requirement." *Id.*

Appellant cites *State v. Cordell*, 34 S.W.3d 719, 721 (Tex. App.—Fort Worth 2000, pet. ref'd), for the proposition that an indictment charging a person with DWI must allege which definition of "intoxicated" the State will attempt to prove at trial. App. Br. at 16. The *Cordell* court, however, relied on *State v. Carter*, 810 S.W.2d 197, 200 (Tex. Crim. App. 1991), which the Court of Criminal

---

[7] The indictment against Appellant alleged that he operated a motor vehicle in a public place while intoxicated and that he previously had been twice convicted of misdemeanor DWI. CR 12.

Appeals overruled in *Barbernell*, 257 S.W.3d 248, 255-56. The *Barbernell* court held that the definitions of "intoxicated" in the DWI statute were evidentiary, and therefore, do not need to be alleged in the charging instrument. *Id.* at 256.

Because Appellant's DWI indictment provided him with fair notice of the offense of which he was being charged, it was not defective, and his second issue should be overruled.

## PRAYER

Appellant's trial was without prejudicial error. The State prays that Appellant's conviction and sentence be affirmed.

Respectfully submitted,

**GREG WILLIS**
Criminal District Attorney
Collin County, Texas

**JOHN R. ROLATER, JR.**
Assistant Criminal District Attorney
Chief of the Appellate Division

/s/ Libby J. Lange
**LIBBY J. LANGE**
Assistant Criminal District Attorney
2100 Bloomdale Rd., Suite 200
McKinney, TX 75071
(972) 548-4323
FAX (214) 491-4860
State Bar No. 11910100
llange@co.collin.tx.us

## CERTIFICATE OF SERVICE

The State has e-served counsel for Appellant, Derek M. Harkrider, and sent a courtesy copy of the State's Brief to harkriderlaw@gmail.com, on this the 29th day of December, 2014.

/s/ Libby J. Lange
Libby J. Lange

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limitations in Texas Rule of Appellate Procedure 9.4(i)(2). In reliance on the word count of the computer program used to prepare this brief, the undersigned attorney certifies that this brief contains 3,534 words, exclusive of the sections of the brief exempted by Rule 9.4(i)(1).

/s/ Libby J. Lange
Libby J. Lange