FILED IN
COURT OF CRIMINAL APPEALS

July 23, 2015

ABEL ACOSTA, CLERK

PD-0745-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/22/2015 3:38:23 PM
Accepted 7/23/2015 9:32:50 AM
ABEL ACOSTA
CLERK

**CASE NO. <u>PD-0745-15</u>**

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

CAUSE NO. 13-13-00369-CR
(Transfer Case No. 05-13-00765-CR)

_____

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
OF OPINION AND JUDGMENT IN CAUSE NO. 13-13-00369-CR
(Transfer Case No. 05-13-00765-CR) ABOUT THE JUDGMENT IN
CAUSE NO. NO. 219-8193-2012 FROM THE 219th DISTRICT COURT
OF COLLIN COUNTY, TEXAS

_____

**JOSE ANGEL LERMA, Appellant**

**VS.**

**THE STATE OF TEXAS, Appellee**

_____

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

_____

Respectfully submitted,

Derek M. Harkrider
Texas Bar No. 24000601
P.O. Box 524138
Houston, Texas 77052
(956) 318-0099 Telephone
(956) 318-0877 Facsimile
harkriderlaw@gmail.com

*Attorney for Appellant*

1

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

Under applicable statutes and Texas Rules of Appellate Procedure [TRAP] 66, et seq., appellant, Jose Angel Lerma, petitions for discretionary review.

# IDENTIFICATION OF PARTIES AND COUNSEL

Appellant certifies that below is a complete list of all parties to the trial court's judgment and their trial counsel's names, addresses, and telephone numbers.

1. The trial court judge was the Honorable Scott Becker of the 219th District Court of Collin County, Texas

2. Appellant is Jose Angel Lerma, 1220 Bedford Lane, Lewisville, TX 75077.

3. Appellant's trial attorney was Hon. Brock Duke, 206 S. Kentucky Street, Suite 101, McKinney, TX 75069, (214) 736-1183. The State of Texas, Appellee, was represented at trial by the Collin County District Attorney, Hon. Greg Willis, by and through Assistant District Attorney, Hon. Lauren Hopkins.

4. Appellee is represented on appeal by Hon. John Rolater, Chief of Appellate Division, and Hon. Libby Lange, Assistant District Attorney, at 2100 Bloomdale Road, Suite 100, McKinney, Texas 75071. Their telephone is (972) 548-4323. Their facsimile number is (214) 491-4860.

/s/ Derek M. Harkrider
DEREK M. HARKRIDER

# TABLE OF CONTENTS

Identity of Parties and Counsel…………………………………………….................3

Table of Contents……………………………………………….........................................4

Index of Authorities……………………………………………...................................5

Statement Regarding Oral Argument……………………………………………........6

Statement of the Case…………………………………………… .........................6

Statement of Procedural History……………………………………………...............6

Grounds for Review……………………………………………......................................8

Argument…………………………………………… .........................................................9

      SHOULD THE COURT OVERRULE ITS HOLDING IN <u>STATE v.</u>
      <u>BARBERNELL</u> IN FAVOR OF PRIOR PRECEDENT AS HELD IN
      <u>STATE v. GARCIA</u> AND <u>STATE V. CARTER</u>, REQUIRING THE
      STATE TO INFORM THE DEFENDANT IN THE CHARGING
      INSTRUMENT OF THE TYPE OF INTOXICANT AND THE
      DEFINITION OF INTOXICATION IT INTENDS TO PROVE AT TRIAL?8

Prayer …………………………………………….........................................................21

Certificate of Compliance …………………………………………….....................22

Certificate of Service ……………………………………………...........................23

Appendix ……………………………………………..........................................24

      Memorandum Opinion:
      <u>Jose Angel Lerma v. State</u>, No. 13-13-00369-CR (Tex. App.– Corpus
      Christi, delivered April 23, 2015) (not designated for publication)

# INDEX OF AUTHORITIES

**CASES**

Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1985)....................................10

Brem v. State, 571 S.W.2d 314 (Tex. Crim. App. 1978) ........................................12

Crenshaw v. State, 378 S.W.3d 460 (Tex. Crim. App. 2012) ................................13

Curry v. State, 30 S.W.3d 394 (Tex. Crim. App. 2000 ....................................10, 19

Dennis v. State, 647 S.W.2d 275 (Tex. Crim. App. 1983).....................................12

Ferguson v. State, 622 S.W.2d 846 (Tex. Crim. App. 1980) ..................... 10, 16-17

Garcia v. State, 747 S.W.2d 379 (Tex. Crim. App. 1988) ......................................15

Geter v. State, 779 S.W.2d 403 (Tex. Crim. App. 1989) ........................................19

Gray v. State, 152 S.W.3d 125 (Tex. Crim. App. 2004) ................................. 15-16

Harrison v. State, 76 S.W.3d 537 (Tex. App.–Corpus Christi 2002) ................ 12-13

Lawrence v. State, 240 S.W.3d 912 (Tex. Crim. App. 2007) .................................10

Miller v. State, 333 S.W.3d 352 (Tex. App.–Ft. Worth 2010)...............................13

Russell v. State, 665 S.W.2d 771 (Tex. Crim. App. 1979) ....................................10

Salahud-din v. State, 206 S.W.3d 790 (Tex. Crim. App. 2006)..............................12

Solis v. State, 787 S.W.2d 388 (Tex. Crim. App. 1990) ........................................19

State v. Barbernell, 257 S.W.3d 248 (Tex. Crim. App. 2008) ...............13-14, 16-18

State v. Carter, 810 S.W.2d 197 (Tex. Crim. App. 1991) .................... 14, 16-17, 19

State v. Cordell, 34 S.W.3d 719 (Tex. App.– Fort Worth 2000)............................19

State v. Goodman, 221 S.W.3d 116 (Tex. App.–Ft. Worth 2006) .........................12

State v. Mays, 967 S.W.2d 404 (Tex. Crim. App. 1998) .......................................10

State v. Moff, 154 S.W.3d 599 (Tex. Crim. App. 2004) ........................................12

State v. Shuck, 222 S.W.3d 113 (Tex. App.–Houston 2006)..................................12

Thomas v. State, 621 S.W.2d 161 (Tex. Crim. App. 1981) ...................................19


**STATUTES AND CONSTITUTION**

Tex. Code Crim. Proc. Art. 21.03 ..........................................................................13

Tex. Code Crim. Proc Art. 21.04 ...........................................................................12

Tex. Code Crim. Proc. Art. 21.11 ..........................................................................12

Tex. Code Crim. Proc. Art. 21.19 ..........................................................................12

Tex. Code Crim. Proc. Art. 21.21 .....................................................................10, 12

Tex. Code Crim. Proc. Art. 21.23 ..........................................................................12

Tex. Code Crim. Proc. Art 36.19 ...........................................................................10

Tex. Pen. Code § 49.01 ............................................................................................9

Tex. Pen. Code § 49.04 ............................................................................................9

Texas Const. Art. I § 10 ..........................................................................................12

United States Constitution, Sixth Amendment.......................................................12

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is waived, unless the court requests oral argument.

## STATEMENT OF THE CASE

On August 16, 2012, a grand jury in Collin County, Texas returned and filed a True Bill of Indictment against the Defendant, Jose Angel Lerma, charging him with Driving While Intoxicated (DWI), a third degree felony. The indictment alleged that the crime took place on or about May 26, 2012, and that the Defendant had two prior convictions for Driving While Intoxicated, namely that the Defendant was convicted of a DWI on November 17, 1995, in the County Court at Law No. Five (5) of Dallas County, Texas, and that he was also convicted of a DWI on September 10, 1997, in Dallas County, Texas. CR12.

## STATEMENT OF PROCEDURAL HISTORY

On August 16, 2012, a grand jury in Collin County, Texas returned and filed a True Bill of Indictment against the Defendant, Jose Angel Lerma, charging him with Driving While Intoxicated (DWI), a third degree felony. On April 30, 3013, the parties announced ready and the case proceeded to a jury trial. 2RR4-5. On May 1, 2013, the jury found the Defendant guilty of the offense of Driving While Intoxicated (DWI), a third degree felony. 3RR177.

After the jury verdict was read in open court, the State and the Appellant announced that they had reached an agreement on punishment. 3RR178-179.

The court accepted the agreed punishment and, in open court, sentenced the Defendant to ten (10) years imprisonment, however, the sentence was suspended and the Defendant was placed on community supervision for seven years. 3RR179-180.

On May 31, 2013, the Defendant filed a pro se Notice of Appeal, and this appeal ensued. CR84. After considering the briefs of Appellant and State, on April 23, 2015, the Thirteenth Court of Appeals issued a Memorandum Opinion affirming the trial court's judgment.

On May 13, 2015, Appellant filed a Motion for Rehearing, and Alternatively, Motion for Rehearing En Banc. On May 21, 2015, the Thirteenth Court of Appeals overruled/denied the motions for rehearing. On June 17, 2015, Appellant's counsel, Derek Harkrider, requested an extension of time to file the Appellant's Petition for Discretionary Review (PDR). This Court granted an extension of time to file the PDR until July 22, 2015.

**GROUNDS FOR REVIEW**

1. SHOULD THE COURT OVERRULE ITS HOLDING IN STATE v. BARBERNELL IN FAVOR OF PRIOR PRECEDENT AS HELD IN STATE v. GARCIA AND STATE v. CARTER, REQUIRING THE STATE TO INFORM THE DEFENDANT IN THE CHARGING INSTRUMENT OF THE TYPE OF INTOXICANT AND THE DEFINITION OF INTOXICATION IT INTENDS TO PROVE AT TRIAL?

## ARGUMENT

**GROUND ONE:**

**SHOULD THE COURT OVERRULE ITS HOLDING IN <u>STATE v. BARBERNELL</u> IN FAVOR OF PRIOR PRECEDENT AS HELD IN <u>STATE v. GARCIA</u> AND <u>STATE v. CARTER</u>, REQUIRING THE STATE TO INFORM THE DEFENDANT IN THE CHARGING INSTRUMENT OF THE TYPE OF INTOXICANT AND THE DEFINITION OF INTOXICATION IT INTENDS TO PROVE AT TRIAL?**

This ground for discretionary review is based on <u>ISSUE NO. TWO</u> raised in the Appellant's brief to the Thirteenth Court of Appeals. In his second point of error, the Appellant argued that he was entitled to a new trial because the indictment failed to define intoxication or the type of intoxicant the State intended to prove at trial.

A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place. Tex. Pen. Code § 49.04. Intoxicated means (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (B) having an alcohol concentration of 0.08 or more. Tex. Pen. Code § 49.01.

The indictment states, ". . . then and there operate a motor vehicle in a public place while said defendant was intoxicated." CR12. The indictment fails to

9

include the definition of intoxication as defined above, no specify the type of intoxicant alleged to have caused the intoxication. The definition of intoxication as found in Tex. Pen. Code § 49.01 is essential to make the offense a crime, and is indispensable to the indictment.

A criminal defendant is entitled to fair notice of the specific charged offense. See U.S. Const. Amend. VI; Tex. Const. art. I, § 10. Lawrence v. State, 240 S.W.3d 912, 916 (Tex. Crim. App. 2007); Ferguson v. State, 622 S.W.2d 846, 849 (Tex. Crim. App. 1981 (opinion on reh'g). The charging instrument must convey this notice sufficiently so that the accused may prepare his defense. Curry v. State, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000) (citing State v. Mays, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998). The information must set out the offense in plain and intelligible words and must include everything that is necessary to be proved. Tex. Code Crim. Proc. art. 21.21.

Since appellant did not file a motion to quash the indictment or object to the offensive portion of the charge, the court may reverse for error on the charge, if any, only if it is fundamental and "so egregious and created such harm that appellant 'has not had a fair and impartial trial.'" Almanza v. State, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985); Tex. Code Crim. Proc. Art 36.19. Error in an indictment is reversible if the indictment does not allege the constituent elements of the offense. Russell v. State, 665 S.W.2d 771, 777 (Tex. Crim. App. 1979);

10

Dennis v. State, 647 S.W.2d 275, 278 (Tex. Crim. App. 1983); Brem v. State, 571 S.W.2d 314, 317 (Tex. Crim. App. 1978); Tex. Code Crim. Proc. Art. 21.19.

The sufficiency of the indictment is a question of law that the appellate courts review de novo. State v. Moff, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). An indictment is legally sufficient if it tracks the penal statute in question; however, in some cases, the State must further specify the acts it is prosecuting so the defendant can adequately investigate the allegations against him and prepare a defense. State v. Shuck, 222 S.W.3d 113 (Tex. App.–Houston 2006); Tex. Code Crim. Proc. Art. 21.11. To presume that an accused is guilty and therefore already knows the details of his offense, and thus can adequately prepare his defense despite a vague indictment, is contrary to all proper principles of justice. State v. Goodman, 221 S.W.3d 116 (Tex. App.–Ft. Worth 2006); U.S.C.A Const., Amend. 6; Texas Const. Art. 1 § 10; Tex. Code Crim. Proc Arts. 21.04, 21.21(7), 21.23. An indictment must contain the elements of the offense, fairly inform the defendant of charges he must prepare to meet, and enable the defendant to plead acquittal or conviction in bar to future prosecution for the same offense. Harrison v. State, 76 S.W.3d 537 (Tex. App.– Corpus Christi 2002); Tex. Code Crim. Proc. Art. 21.11.

The failure to allege an element of an offense in an indictment is a defect in the substance of the indictment. Salahud-din v. State, 206 S.W.3d 790 (Tex. Crim.

App. 2006). Everything that must be proved must be pleaded in the indictment. Miller v. State, 333 S.W.3d 352, 356 (Tex. App.–Ft. Worth 2010); Harrison v. State, 76 S.W.3d 537 (Tex. App.–Corpus Christi 2002); Tex. Code Crim. Proc. Art. 21.03.

Relying on State v. Barbernell, the Thirteenth Court of Appeals (hereinafter also referred to as "appellate court") affirmed the trial court's judgment of conviction. Although the appellate court recognized that the United States and Texas Constitutions grant criminal defendants "the right to fair notice of the specific charged offense," the appellate court found that the indictment was not defective because in a DWI case, "the definitions of 'intoxicated' are purely evidentiary matters" and "do not need to be alleged in a charging instrument to provide a defendant with sufficient notice." *See Memorandum Opinion at p. 13 (citing* State v. Barbernell, 257 S.W.3d 248, 250 (Tex. Crim. App. 2008) (noting that the definitions "set forth alternative means by which the State may prove intoxication, rather than alternative means of committing the offense"). The Court also cites Crenshaw v. State, wherein the Texas Court of Criminal Appeals followed Barbernell, citing that the "State may simply allege that a person was 'intoxicated' to satisfy the notice requirement." Crenshaw v. State, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012) (citing Barbernell, 257 S.W.3d at 256).

The Barbernell court reversed longstanding precedent and revisited its

decision in State v. Carter, wherein the court held that the State must allege which definition of intoxicated - "loss of faculties" or "per se" intoxication (i.e., alcohol concentration) - that the State intends to prove at trial. State v. Carter, 810 S.W.2d 197 (Tex. Crim. App. 1991). However, in Barbernell, the court restricted its analysis to whether or not the manner of intoxication, either loss of faculties or alcohol concentration, is an element of the offense of driving while intoxicated which must be alleged in the charging instrument. State v. Barbernell, 257 S.W.3d at 250.

In Barbernell, the trial court sustained the defense motion to quash due to the State's failure to allege which definition of "intoxicated" that it intended to prove at trial. The court of appeals affirmed the trial judge's decision reasoning that intoxication is an act or omission and that the definitions of "intoxicated" provide for different means of commission. However, the Court of Criminal Appeals reversed and vacated the judgement holding that "intoxicated" does not describe and act or omission.

The defense relied on the Court of Criminal Appeals' 1991 decision in State v. Carter, which held that the State must allege which definition of intoxicated - "loss of faculties" or "per se" intoxication (i.e., alcohol concentration) - that the State intends to prove at trial. State v. Carter, 810 S.W.2d 197 (Tex. Crim. App. 1991). Barbernell claimed that the information failed to provide him with adequate

13

notice of the manner and means (i.e., the definition of "intoxicated" the State intended to prove) in which he committed the offense. In response, the State relied on the Court of Criminal Appeals 2004 opinion in Gray v. State, which held that the definitions of "intoxicated" are not elements of DWI. *See* Gray v. State, 152 S.W.3d 125 (Tex. Crim. App. 2004). This will be discussed in more detail later in this petition.

The Barbernell Court acknowledged that in its 1988 decision in Garcia, the court held that in order to provide adequate notice, the State must allege the specific type of intoxicant(s) the defendant allegedly used to become intoxicated. Barbernell, 257 S.W.3d at 252 (citing Garcia v. State, 747 S.W.2d 379, 381 (Tex. Crim. App. 1988)). In Garcia, the Court of Criminal Appeals reasoned that the prohibited conduct of becoming intoxicated depends on an act or omission of the defendant, and that such conduct, under the first definition for "intoxication," "can be accomplished in several different ways." Id. The type of intoxicant "becomes an element of the offense and critically necessary to the State's proof." Id. The Court held that Garcia was not provided adequate notice. Id. In Garcia, the Court of Criminal Appeals referred to Ferguson v. State, where the Court held that when an act or omission by a defendant is statutorily defined, and that definition provides more than one way to commit the act or omission, then, upon timely request, the State must allege the manner and means it seeks to establish. Garcia

14

v. State, 747 S.W.2d at 379 (citing Ferguson v. State, 622 S.W.2d 846, 851 (Tex. Crim. App. 1981)). The type of intoxicant becomes an element of the offense and critically necessary to the State's proof. Id. Note that Garcia was later overturned by the Court of Criminal Appeals, holding that the substance that causes the intoxication is not an element of the offense. See Gray v. State, 152 S.W.3d 125, 132 (Tex. Crim. App. 2004).

The Barbernell court stated, "Approximately three years later, examining the same statute in Carter, we built on Garcia's holding and stated that, in addition to alleging the specific type of intoxicant, the State must also allege the definition of 'intoxicated' that it intends to prove at trial to provide adequate notice." Barbernell, 257 S.W.3d at 252 (citing State v. Carter, 810 S.W.2d 197, 200 (Tex. Crim. App. 1991). In Carter, the State did not allege the type of intoxicant (i.e., alcohol, controlled substance, drug, or a combination thereof) or specify what definition of "intoxicated" the prosecutor would rely on at trial. Carter, 810 S.W.2d at 200. The court noted that the definitions of "intoxicated" describe two types of DWI offenses, a "loss of faculties" offense and a "per se offense." Id. In Carter, the Court held that the information, which did not specify the type of intoxicant Carter allegedly used or the definition of "intoxicated" that the State would rely on at trial, did not provide Carter with adequate notice so he could prepare his defense. State v. Carter, 810 S.W.2d at 200.

15

Like <u>Garcia</u>, the <u>Carter</u> court stated that "even though an act or omission by a defendant is statutorily defined, if that definition provides for more than one manner or means to commit that act or omission, then upon timely request, the State must alleged the particular manner and means it seeks to establish." <u>Carter</u>, 810 S.W.2d at 199 (citing <u>Ferguson v. State</u>, 622 S.W.2d at 851). The reason for the exception is that a defendant is constitutionally entitled to know what behavior he allegedly engaged in so that he can properly prepare a defense to that allegation. <u>Id</u>. Under the constitutional guarantee of adequate notice, a defendant may not "be left to guess or assume that the State [is] going to prove one or all the types of [statutorily-defined] conduct. <u>Id</u>. In explaining its holding, the Court recognized the "fundamentally different natures" of the loss of faculties definitions and the per se alcohol concentration DWI offense. <u>Carter</u>, 810 S.W.2d at 200.

In <u>Barbernell</u>, the Court of Criminal Appeals recognized that <u>Gray</u> overruled Garcia, but that it was not controlling of the issue about pleading the specific definition of "intoxication," as held in <u>Carter</u>. See <u>Barbernell</u>, 257 S.W.3d at 255. The Court stated:

> . . . our notice jurisprudence makes clear that the courts must engage in a two-step analysis. First, a court must identify the elements of an offense, which includes the forbidden conduct. Next, as to the second inquiry, when the Legislature has defined an element of the offense that describes an act or omission, a court must ask whether the definitions provide alternative manners or means in which the act or omission can be committed. If this second inquiry is answered in the affirmative, a charging instrument will supply adequate notice only if,

16

in addition to setting out the elements of an offense, it also alleges the specific manner and means of commission that the State intends to rely on at trial.

Id. The Court then revisited Carter and stated that the Court's analysis was incorrect. Id. The Court asked "whether the definitions of 'intoxicated' concern an act or omission to create two different manners and means of committing DWI." Barbernell, 257 S.W.3d at 256. The Court held that the definitions "set forth alternative means by which the State may prove intoxication, rather than alternate means of committing the offense." Id. The Court further stated that the definitions of "intoxicated" are purely evidentiary matters; therefore, they do not need to be alleged in a charging instrument to provide a defendant with sufficient notice." Id. The Court overruled Carter and held that the definitions of "intoxicated" in Section 49.01(2) are evidentiary and therefore need not be alleged in a charging instrument. Id.

Appellant asserts that the Court should overrule Barbernell in favor of following prior precedent as stated in Garcia and Carter (i.e., the State should be required to plead in the charging instrument the type of intoxicant and the definition of "intoxicated" upon which it intends to prove at trial). It is worth noting that the Fort Worth Court of Appeals followed the holding in Carter, holding that an indictment or information charging a person with driving while intoxicated must allege which definition of "intoxicated" the State will attempt to

17

prove at trial and which type of intoxicant the defendant is accused of taking. See State v. Cordell, 34 S.W.3d 719, 721 (Tex. App.– Fort Worth 2000) (citing State v. Carter, 810 S.W.2d 197, 200 (Tex. Crim. App. 1991).

As stated previously herein, an accused has a right under the United States and Texas Constitutions of adequate notice of the charges against him so that he may adequately prepare a defense.  In its Memorandum Opinion, the Thirteenth Court of Appeals failed to discuss the Appellant's argument that the indictment was defective because it failed to allege the type of intoxication, to-wit, whether the intoxication was by means of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more substances, or any other substances in the body. *See Brief of Appellant at p. 15.*

It has long been held that in some cases, a charging instrument that tracks the statutory language may be insufficient to provide a defendant with adequate notice. Curry v. State, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000).  This is so when the statutory language is not completely descriptive. Id.  The statutory language is not completely descriptive  "when the statutes define a term in such a way as to create several means of committing an offense, and the definition specifically concerns an act or omission on the part of the defendant."  Solis v. State, 787 S.W.2d 388, 390 (Tex. Crim. App. 1990); Geter v. State, 779 S.W.2d 403, 405 (Tex. Crim. App. 1989) (citing Thomas v. State, 621 S.W.2d 161 (Tex.

18

Crim. App. 1981).

The <u>Barbernell</u> court seems to undermine the importance of the actual act of becoming intoxicated. There are several ways to become intoxicated, by alcohol, by drugs, by a controlled substance, or by a combination of one or more substances. The <u>Garcia</u> court recognized the importance of informing the accused of what the State was alleging caused his intoxication. It is evident that an accused would prepare his defense differently depending if he was alleged to be intoxicated by way of alcohol as opposed to a controlled substance or drugs. These allegations would have an impact on symptoms and evidence of intoxication. More importantly, an accused's decision and reliance on expert testimony would be significantly affected depending on the intoxicant alleged by the State. Without pleading the type of intoxicant in the charging instrument, the accused would not be afforded a fair opportunity to prepare a defense to the accusation. Further, the defense could not make an informed decision whether they needed an expert witness pertaining to either intoxication by alcohol, a drug, controlled substance or other substances. The Court should follow the previous precedent as held in <u>Garcia v. State</u>.

Further, in Appellant's case, the indictment clearly did not define intoxication (i.e., not having the normal use of the mental or physical faculties as opposed to the per se definition of intoxication). Appellant asserts that the Court

should reverse <u>Barbernell</u> in favor of the previous precedent as found in <u>State v. Carter</u>. As previously discussed, defense strategy would heavily depend on the specific definition of "intoxication" the State intends to rely upon at trial. The defense would be at a disadvantage because they would not be able to make informed decisions as to its defense theory, especially as it pertains to retaining an expert witness. If the State is not required to plead the definition of intoxication, then the defense would never know whether or not it needs an expert witness to testify as to the per se intoxication (i.e., statutory limit) or as to symptoms of intoxication related to loss of the normal use of physical or mental faculties.

Further, <u>Barbernell</u> fails to properly analyze the manner and means of committing the DWI offense. <u>Barbernell</u> states that the alternate definitions of "intoxication" are not alternate manner and means of committing the offense, and therefore, do not have to be specifically pled, since they are just proof. However, <u>Barbernell</u> fails to adequately consider that the per se definition of "intoxication" only pertains to alcohol concentration, whereas the alternate definition also includes drugs, controlled substances or other substances. Therefore, the forbidden conduct is different, one by ingesting alcohol only, and the other possibly by also ingesting drugs or controlled substances. Therefore, notice requirements demand that the State inform the accused what specific act/conduct gave rise to the offense (i.e., ingesting drugs/controlled substances or alcohol).

20

Accordingly, the Court of Criminal Appeals should grant discretionary review on this issue for the reasons stated herein.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays that this Court grant discretionary review and, after full briefing on the merits, issue an opinion reversing the Court of Appeals' judgment and remanding the cause to the trial court for a new trial consistent with the holding of this Court.

Respectfully submitted,


By: /s/  Derek M. Harkrider
DEREK M. HARKRIDER
TBN: 24000601
P.O. Box 524138
Houston, Texas 77052
(956) 318-0099   Telephone
(956) 318-0877   Facsimile
harkriderlaw@gmail.com

***Attorney for Appellant***

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), that the following First Amended Motion for Rehearing Or, In the Alternative, For Rehearing En Banc conforms with Texas Rule of Appellate Procedure 9.4, in that this brief is a computer generated document created in MS Word, is printed in a conventional typeface, to-wit, New Times Roman, in 14-point font, and the computer generated word count of the parts of this motion to be counted according to Rule 9.4(i)(1) is 4,164 words, excluding the caption, signature block, certificate of compliance and certificate/proof of service. Therefore, this document complies with the word count requirements as it does not exceed 4,500 words.

/s/ Derek M. Harkrider
DEREK M. HARKRIDER

## CERTIFICATE OF SERVICE

I, DEREK M. HARKRIDER, hereby certify that on July 22, 2015, a true and correct copy of the foregoing document has been forwarded via electronic delivery and/or certified mail to:

Hon. Greg Willis
Collin County District Attorney
Hon. John Rolater
Chief of Appellate Division
2100 Bloomdale Road, Suite 100
McKinney, Texas 75071

And

Hon. Lisa C. McMinn
State's Prosecuting Attorney
P. O. Box 13046
Austin, Texas 78711-3046

/s/ Derek M. Harkrider
DEREK M. HARKRIDER

# APPENDIX

1.  Memorandum Opinion



# NUMBER 13-13-00369-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSE ANGEL LERMA,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

### On appeal from the 219th District Court
### of Collin County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides and Perkes
### Memorandum Opinion by Justice Garza

Appellant, Jose Angel Lerma, appeals his third conviction for driving while intoxicated ("DWI"), a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2) (West, Westlaw through 2013 3d C.S.). The trial court assessed punishment at ten years' imprisonment, suspended the sentence, and placed Lerma on community supervision for seven years. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3(a) (West,

Westlaw through 2013 3d C.S.).  We affirm.[1]

## I. BACKGROUND

Clayton Platt testified that he was employed as a highway patrol trooper and was patrolling the Sam Rayburn Tollway in McKinney, Texas, at around 1:00 a.m. on May 26, 2012.  Platt was parked in his marked patrol car on the northbound shoulder when he heard a "loud, grinding noise coming up."  He observed "a passenger car on the access road traveling northbound" with "what appears to [be] no tire on the front left and it's just sparking as it's driving along, sparks coming out the sides and sparks coming out the rear."  Platt drove up behind the car and activated his emergency lights.  The driver, whom Platt identified as Lerma, "[d]idn't appear to react at all" to the emergency lights.  According to Platt, Lerma was "driving relatively slowly but weaving the whole time."  Another officer pulled up alongside Lerma "in order to get [his] attention."  Platt used his patrol unit's public address system—"turned up as loud as it could be"—to demand that Lerma stop.  Eventually, after about a minute and a half, the car stopped.  Platt removed Lerma from the car at gunpoint.  Because Lerma "wasn't really complying," another officer "did a leg sweep" and "took him to the ground."

Platt stated:  "At that point [we] went up and just started talking with him.  We're talking with him, there's an immediate strong odor of alcohol coming from his breath. . . .  His eyes were really glassy."  Platt therefore decided to conduct three standardized field sobriety tests:  horizontal nystagmus, walk-and-turn, and one-leg stand.  In order to determine whether Lerma was a good candidate for a horizontal

---

[1] This appeal was transferred from the Fifth Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court.  *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

nystagmus test, Platt asked Lerma about any prior head injuries. Lerma stated that he "hit [his head] on the first-aid kit . . . at his office" but did not indicate that "he was still having issues with [the injury]." Lerma also complained of "flu-like symptoms" and that his head was hurting. Platt determined that Lerma was a good candidate for the horizontal nystagmus test. The horizontal nystagmus test showed clues of "lack of smooth pursuit," "distinct and sustained nystagmus at maximum deviation," and "onset of nystagmus prior to 45 degrees" in each eye. According to Platt, these results "certainly indicated intoxication at that point."

In order to determine whether Lerma was a good candidate for the walk-and-turn test, Platt asked Lerma if he had any leg or back injuries. Lerma told him that "a month or two ago . . . a piece of steel hit him in the shin at work." Platt testified: "So—he'd already informed me that he worked at a data entry center, so I was a little—little confused at this point at the—it's a pretty dangerous data entry center to be having all these injuries he had." Lerma also "said he had a little pain in his back but nothing that would keep him from walking."[2] Platt determined that Lerma was a good candidate for this test. After administering the test, Platt observed two out of a possible eight clues of intoxication; in particular, Lerma "failed to keep his balance during the instructions" and "did not touch heel-to-toe as instructed." Platt stated that, for this test, "two or more clues indicate intoxication."

Finally, Platt administered a one-leg stand test. During this test, Lerma was asking

_____

[2] When asked whether "for every test [Lerma] gave you a reason why he might have an injury in that area," Platt replied: "He did." However, he did not believe those alleged injuries would affect his ability to perform the sobriety tests because: "Not only did I ask him if he's okay to perform them, but I didn't see any indication other than him saying that happened . . . that it was still affecting him."

3

"confusing" questions and was "not really communicating effectively."[3] Platt observed three out of a possible four clues of intoxication; in particular, Lerma was "swaying back and forth," he put his foot down, and he hopped. Platt stated that, as with the walk-and-turn test, the presence of two or more clues in this test indicates intoxication. Based on the results of all three field sobriety tests, Platt placed Lerma under arrest for DWI.

After the arrest, Platt placed Lerma in his patrol unit and asked for consent to take a breath sample or a blood sample. Lerma refused to consent to either. However, Platt stated that he was authorized by law to take a mandatory blood sample, *see* TEX. TRANSP. CODE ANN. § 724.012(a) (West, Westlaw through 2013 3d C.S.),[4] and so he transported Lerma to the Medical Center of McKinney for that purpose. After the blood sample was taken at around 2:15 a.m., Platt took Lerma to the Collin County Jail. Subsequent analysis of the blood sample revealed an alcohol concentration of .06 grams per 100 milliliters, which is below the legal limit in Texas. *See* TEX. PENAL CODE ANN. § 49.01(2)(B) (West, Westlaw through 2013 3d C.S.).

Platt denied that Lerma ever mentioned that something unusual had happened to him earlier that day. He denied that Lerma was hesitant or afraid to speak with him. Platt stated that he never was aware of any information indicating that Lerma "might need

---

[3] Platt testified that, even though Lerma stated that he was heading to his home in Lewisville, Lerma was traveling northbound, away from Lewisville. Platt agreed that, at one point, Lerma "[was] sure he [was] in Lewisville and [the officers were] messing with him."

[4] In fact, the mandatory blood draw statute requires an officer to take a breath or blood sample if the officer has reliable information indicating that the DWI arrestee has two prior DWI convictions and the arrestee refuses the officer's request to submit to the taking of a sample voluntarily. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (West, Westlaw through 2013 3d C.S.). We have previously held that the mandatory blood draw statute does not create a new and distinct exception to the Fourth Amendment warrant requirement and that a blood draw is generally unconstitutional absent a warrant, exigent circumstances, or consent. *State v. Villarreal*, No. 13-13-00253-CR, 2014 WL 1257150, at *11 (Tex. App.— Corpus Christi Jan. 23, 2014, pet. granted). However, Lerma did not object to the admission of the blood test results into evidence, and so we do not address that issue.

additional medical attention on that night."

Platt testified that the fact that the alcohol content of Lerma's blood sample was under the legal limit does not affect his opinion about whether Lerma was intoxicated because "it's pretty clear from the totality of circumstances that night with dealing with him that he was intoxicated." Platt opined that "[i]t's possible he was[] intoxicated solely on alcohol, he just can't handle .06," and that, considering the blood test results, "it's very possible that he also had something else in his system." He also speculated that Lerma's blood alcohol concentration may have declined somewhat between the time Lerma was initially stopped by police and the time the blood was taken.

On cross-examination, Platt conceded that officers were unable to locate the tire that had detached from Lerma's car. He agreed that he had never been given training, beyond "first responder basic training," on how to identify symptoms of a stroke or other neurological disorders. When asked whether it is possible that Lerma's blood alcohol concentration was below .06 at the time of driving, Platt replied: "Anything is possible, sure." He gave the same response to defense counsel's question as to whether it was possible that Lerma's blood alcohol concentration increased from the time of driving to the time of the blood draw.

DPS Trooper Matthew Kasenic testified that, on the night in question, he observed Lerma's vehicle "drive past me northbound on the service road with a loud grinding noise and saw sparks, missing a tire." While pursuing the vehicle along with Platt, he noticed that the car was missing a tire on the front driver's side. He shined a light on the driver and noticed that the driver was "staring straight ahead" and "had both hands on the steering wheel at a ten and two position." The car eventually stopped and Platt directed

5

Lerma to get on the ground. According to Kasenic, Lerma did not comply with the order, and so Kasenic "executed a leg sweep and placed the defendant on the ground behind his vehicle and placed handcuffs behind his back." Kasenic then searched Lerma for weapons. Kasenic noted that Lerma's "speech was slurred" and he "could detect a strong odor of alcohol[ic] beverage."

Kasenic asked Lerma where he was headed and what he was doing. Lerma replied that he was coming from Social 121, a bar located in Plano, and that he was "headed home to Lewisville." When Kasenic asked Lerma about the tire, Lerma "said that he stopped to put air in it and he was just going home right down the street." Kasenic testified that these answers did not make sense because Lerma was traveling away from Lewisville, which was "two cities away from where he was actually at," and because there was no tire into which Lerma could have put any air. Kasenic could not recall Lerma ever mentioning anything about feeling badly or having any problem with his legs or his head. Kasenic opined that Lerma was intoxicated that night, and the fact that Lerma's blood tested under the legal limit did not change his opinion.

A video recording of the traffic stop was played for the jury.

Andrew Macey, a DPS forensic scientist, testified that he analyzed the blood sample taken from Lerma and that it contained 0.062 grams of alcohol per 100 milliltires of blood, which is the under the legal limit of .08 grams per 100 milliliters. *See id.* He also testified as follows regarding the rates of elimination and absorption in the blood:

> Absorption rate is pretty much the time it takes for your body to absorb one drink or several drinks, just depends on how many drinks you have. . . . Elimination is the amount that the time it takes for your body to actually eliminate the alcohol from your body.

> Because absorption is so tricky and being that everybody absorbs differently, different factors go into it, different types of alcohol absorb at

6

different rates. We just kind of like to have very wide range and say that one drink would basically raise your alcohol level .01 to .03 per hour, that is very broad. That's not really known because everybody is different.

Elimination is a little bit more known and a little bit more consistent. The[re a]re not as many factors that affect the elimination rate. So the range we use on that is a little bit tighter, and it's still kind of wide, and we use point .01 to .02. It's probably closer to .015 to .018. But we use .01 to .02 just to give an idea of the range it could be.

Macey stated that absorption rate can depend on, among other things, whether the subject is male or female, what type of drink was consumed, whether other drugs were consumed, and if the subject was ill. Elimination rate "normally depends on" whether the subject is an experienced drinker or an alcoholic. Based on a blood alcohol concentration test result and the absorption and elimination rates, a "retrograde extrapolation" can be performed "to work backwards to have an idea of what the number would be at earlier time of the day." However, according to Macey, "it's very difficult" to make a retrograde extrapolation when the time of the last drink consumed is not known.

Macey opined that "[i]t is possible" that a person "could have consumed two beers, been pulled over at 1:15 and then at 3:00 a.m. have an alcohol concentration of [.06]." In Macey's opinion, after an hour and 45 minutes of not drinking, a subject would be "more on the elimination side than on the absorption side." However, "[b]ecause the alcohol curve goes up as you're drinking and then you go down as you're eliminating, there's a possibility in that hour and 45 minutes that you actually could be the same as you were at the time of the draw or higher or lower." He stated that, given Lerma's blood test result and the time elapsed since the traffic stop, his blood alcohol concentration at the time of driving could have been "anywhere from .03 to .04" and "up to .08, .085."

Lerma testified that he is forty-two years old, that he has lived in the Dallas/Fort Worth area for about twenty years, and that he has lived in Lewisville in particular for

7

about six years. He works as an analyst at a data center in Lewisville. Lerma stated he was not intoxicated on the night in question. He acknowledged that his memory regarding what happened was not clear, but he stated that he suffered "flu-like symptoms" that day.[5] He stated that he got off work at around 6:00 p.m. and later met some friends at Pier 121, a marina and restaurant in Lewisville where alcohol is sold.[6] Lerma testified that he "took three beers with [him]" to Pier 121—because "from my experience, I knew my limit"—but that he drank only two of them. While he was at Pier 121, he started getting a "really massive headache" such that he "fe[lt his] head [was] about to explode." His legs became "wobbly and shaky" and his "vision started to go out after a while." He stated he "couldn't focus" and "couldn't think right." Nevertheless, he testified: "I decided, you know, I just could go home and sleep it off or something like that. So I thought I could drive and go home, you know."

When asked how he knew that he only drank two beers if his memory was faded, Lerma stated: "Because I—I told the officer there was another beer in the car, you know. And, like I said, I knew my limits, after the second beer I already started feeling nauseated and headache and stuff—with a headache." The next thing he remembered was being in jail.

Lerma did not recall hitting anything with his car, driving on a rim, or how he ended up in McKinney. He denied taking any illegal drugs that evening. He stated his headache

---

[5] Lerma elaborated:

I just thought it was the flu, and I had to wait to get over it. It was one thing after another one, you know, allergies and then a cough, and then this stuffed nose and just—just like—I thought it was flu symptoms that I could just fight, you know, medication over the counter and get it over with.

[6] Lerma denied knowing about, or ever having been to, Social 121.

"lasted probably close to three months" and that he continued to have blurred vision for "two, three days after" the night in question. He saw a doctor and was prescribed blood pressure medication and antibiotics for a sinus infection. His symptoms did not go away, however, which scared him. He did not see a specialist because he did not have insurance at the time. He has since had other diagnostic tests. He is currently being treated for cholesterol, high blood pressure, and "a bad nerve coming from my head back over here." He agreed with defense counsel's suggestion that he is "being treated at this time for possibly having an onset of a ministroke." Lerma stated that a doctor informed him that he experienced a ministroke, but a CAT scan of his brain "didn't show anything yet." Lerma denied that his behavior on the night in question was the result of any accidents suffered at work.

Lerma stated that he knew that his behavior on the night in question was due to a "medical issue," not due to intoxication, because "two beers are not going to make me act like that, the way I was acting; that's not going to happen, no."

The jury convicted Lerma as charged and the trial court sentenced him as set forth above. This appeal followed.

## II. DISCUSSION

Lerma argues by two issues on appeal that (1) the evidence was insufficient to support the conviction, and (2) the indictment was defective because it failed to define intoxication.

### A. Evidentiary Sufficiency

In reviewing the sufficiency of evidence supporting a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier

9

of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When the record of historical facts supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State,* 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* A hypothetically correct jury charge in this case would state that Lerma is guilty if he: (1) operated a motor vehicle in a public place while he was intoxicated; and (2) had twice been previously convicted of DWI as alleged in the indictment. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09. "Intoxicated" means:

  (A)   not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or

  (B)   having an alcohol concentration of 0.08 or more.

10

*Id.* § 49.01(2) (West, Westlaw through 2013 3d C.S.).[7] The two definitions of "intoxicated" are referred to as the "impairment" theory and the "per se" theory, respectively. *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010).

Lerma does not dispute that the evidence was sufficient to show that he operated his vehicle in a public place or that he was twice previously convicted of DWI. He contends solely that the evidence was insufficient to support a finding of intoxication. We disagree. Platt and Kasenic testified that Lerma drove his car without a front tire, generating a trail of sparks. Platt stated that Lerma "[d]idn't react at all" to his emergency lights but instead drove slowly, "weaving the whole time," and did not stop until Kasenic pulled up alongside him and Platt used his public address system to order him to stop. Platt testified that Lerma exhibited three clues of intoxication in the horizontal nystagmus test; that he failed to keep his balance or "touch heel-to-toe" in the walk-and-turn test; and that he swayed back and forth, put his foot down, and hopped during the one-leg stand test. Kasenic stated that Lerma's speech was slurred and both officers related that Lerma gave nonsensical and confused answers to their questions. Crucially, the officers both testified that there was a "strong odor" of alcohol coming from Lerma's breath when he was removed from the car. All of this evidence, taken together, would allow a reasonable trier of fact to conclude beyond a reasonable doubt that Lerma did "not have[] the normal use of mental or physical faculties by reason of the introduction of alcohol." *See* TEX. PENAL CODE ANN. § 49.02(1)(A); *Kirsch*, 306 S.W.3d at 745 (noting that "evidence that would logically raise an inference that the defendant was intoxicated at the time of driving"

---

[7] For blood tests, "alcohol concentration" means the number of grams of alcohol per 100 milliliters of blood. TEX. PENAL CODE ANN. § 49.01(1) (West, Westlaw through 2013 3d C.S.)

11

includes "erratic driving," "post-driving behavior such as stumbling, swaying, slurring or mumbling words" and "inability to perform field sobriety tests or follow directions").

Lerma contends that his "erratic behavior could be easily explained by medical/neurological conditions." Even assuming that is true, it was the jury's prerogative to believe or disbelieve that explanation. *See Padilla,* 326 S.W.3d at 200. It chose not to believe that explanation, and because there was evidence to support its decision, we may not disturb it.

Lerma also argues that "it should be undisputed that there was insufficient evidence to support that [his] blood alcohol concentration was of .08 or more." *See* TEX. PENAL CODE ANN. § 49.01(2)(B). It is indeed undisputed that Lerma's blood sample contained an alcohol concentration of .062, and that this is under the legal limit. *See id.* However, Macey testified generally that a person's alcohol concentration at the time of driving may be higher or lower than the level established by the blood test results depending on the length of time that elapsed between the driving and the blood test and on the absorption and elimination rates.[8] In any event, under the statute, the jury was authorized to convict if it found that Lerma was intoxicated *either* under the "impairment" or "per se" definitions.[9] *See id.* § 49.01(2); *Kirsch,* 306 S.W.3d at 743. We have already

---

[8] Macey testified that, given the blood test results and the elapsed time between the arrest and the blood draw, Lerma's blood alcohol concentration at the time of driving could have been "anywhere from .03 to .04" and "up to .08, .085" depending on the rates of absorption and elimination. However, there was confusion at trial as to how much time elapsed between the arrest and the blood draw. Platt testified that the stop "was around 1:15 in the morning" and the blood sample was taken "probably about 2:10, 2:15 in the morning"; but in questions posed to Macey, the prosecutor repeatedly referred to the time of the blood draw as "3:00 a.m." It appears that Macey assumed that the blood sample was taken at 3:00 a.m. in giving his estimates regarding retrograde extrapolation. For this reason, we do not consider this specific testimony probative as to Lerma's potential alcohol concentration at the time of driving.

[9] The jury charge in this case contained only the "impairment" definition of "intoxicated." *See* TEX. PENAL CODE ANN. § 49.01(2)(A) (West, Westlaw through 2013 3d C.S.). Generally, if there is evidence to support both definitions of the term, both should be submitted in the jury charge. *Kirsch v. State,* 306 S.W.3d 738, 743 (Tex. Crim. App. 2010).

12

concluded that there was sufficient evidence to prove intoxication under the "impairment" definition. Accordingly, even if the evidence was insufficient to establish "per se" intoxication, the conviction was nevertheless supported by sufficient evidence.

We overrule Lerma's first issue.

## B. Indictment

By his second issue, Lerma argues that the indictment was defective because it failed to define intoxication. He argues that "[t]he definition of intoxication as found in [penal code section] 49.01 is essential to make the offense a crime, and is indispensable to the indictment."

The State contends that Lerma waived the issue because he did not move to quash the indictment or otherwise object to it prior to trial. We agree.

> If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.

TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West, Westlaw through 2013 3d C.S.). Because Lerma did not present this argument to the trial court at any time, it has not been preserved for appeal. *See id.*; *see also* TEX. R. APP. P. 33.1(a).

Even if the issue had been preserved, it would not be meritorious. The United States and Texas Constitutions grant criminal defendants "the right to fair notice of the specific charged offense." *State v. Barbernell*, 257 S.W.3d 248, 250 (Tex. Crim. App. 2008) (citing U.S. CONST. amend. VI; TEX. CONST. art. I, § 10); *see* TEX. CODE CRIM. PROC. ANN. art. 21.11 (West, Westlaw through 2013 3d C.S.). But in a DWI case, "the definitions of 'intoxicated' are purely evidentiary matters" and "do not need to be alleged in a charging instrument to provide a defendant with sufficient notice." *Barbernell*, 257 S.W.3d at 256

13

(Tex. Crim. App. 2008) (noting that the definitions "set forth alternative means by which the State may *prove* intoxication, rather than alternate means of *committing* the offense"); *see Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012).

Lerma's second issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of April, 2015.