

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0867-07

---

### THE STATE OF TEXAS

### v.

### STEPHEN GREGORY BARBERNELL, Appellee

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### MONTGOMERY COUNTY

---

**KEASLER, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

Stephen Gregory Barbernell was charged with DWI.  The court of appeals affirmed

the trial judge's decision to grant Barbernell's motion to quash due to the State's failure to

allege which definition of "intoxicated" that it intended to prove at trial.[1]  The court reasoned

that intoxication is an act or omission and that the definitions of "intoxicated" provide for

---

[1]  *Barbernell v. State*, 221 S.W.3d 914, 917-18 (Tex. App.—Beaumont 2007).

different means of commission.[2]  Because we hold that the definitions of "intoxicated" do not describe an act or omission, we reverse and vacate the judgment of the court of appeals and remand this case to the trial court.

## I.  Procedural History

Barbernell was charged by information with the misdemeanor offense of driving while intoxicated under Texas Penal Code, Section 49.04.  Section 49.04 defines the offense of DWI and reads, in part, as follows: "A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place."[3]  Section 49.01(2), Texas Penal Code, sets out two definitions of "intoxicated."[4]

> "Intoxicated" means:
> (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or
> (B) having an alcohol concentration of 0.08 or more.[5]

The information charging Barbernell alleged: "on or about April 30, 2005, in Montgomery County, Texas, Stephen Gregory Barbernell . . ., while operating a motor vehicle in a public place, was then and there intoxicated[.]"

Barbernell moved to quash the information because the State failed to allege the

---

[2]  *Id.* at 917.

[3] TEX. PENAL CODE ANN. § 49.04 (Vernon 2003).

[4] TEX. PENAL CODE ANN. § 49.01(2)(A)-(B) (Vernon 2003).

[5]  *Id.*

definition of "intoxicated" set out in Section 49.01(2) that it intended to prove at trial. In support of his motion, Barbernell relied on our 1991 decision in *Carter v. State*,[6] which held that the State must allege which definition of intoxicated—"loss of faculties" or "per se" intoxication (i.e., alcohol concentration)[7]—that the State intends to prove at trial.[8] Barbernell claimed that the information failed to provide him with adequate notice of the manner and means (i.e., the definition of "intoxicated" that the State intended to prove) in which he committed the offense. In response, the State argued that our 2004 opinion in *Gray v. State*[9] establishes that the definitions of "intoxicated" are not elements of DWI. After a brief hearing, the trial judge granted Barbernell's motion to quash. The State then timely filed a notice of appeal.[10]

## II. Court of Appeals

In the Beaumont Court of Appeals, the State argued that the judge erred in granting Barbernell's motion to quash.[11] In doing so, the State reasserted its reliance on our decision

---

[6] 810 S.W.2d 197 (Tex. Crim. App. 1991).

[7] TEX. PENAL CODE ANN. § 49.01(2) (previously codified at TEX. REV. CIVIL STAT. art. 6701*l*-(a)(2)).

[8] *Id.*

[9] 152 S.W.3d 125 (Tex. Crim. App. 2004).

[10] *See* TEX. CODE CRIM. PROC. art. 44.01(a)(1) (Vernon Supp. 2005).

[11] *Barbernell*, 221 S.W.3d at 916.

in *Gray*, while Barbernell continued to rely on *Carter*.[12]  Finding that *Gray* did not address

*Carter*'s holding, the court of appeals, after reviewing our analysis of the elements of DWI

in *Gray*, held that the element of "intoxicated" is an act or omission and that the definitions

of "intoxicated" provide different manner or means to commit intoxication.[13] Due to the

State's failure to allege the definition of "intoxicated" that it intended to prove at trial, the

court held that the information did not sufficiently notify Barbernell of the charged offense.[14]

As a result, the court affirmed the trial judge's decision to grant Barbernell's motion to

quash.[15]

In a concurring opinion, Justice Horton noted that *Carter* is controlling authority.[16]

However, Justice Horton stated that he believed that the State was correct in asserting that

the definitions of "intoxicated" are evidentiary matters, as opposed to manner and means of

commission, and therefore do not need to be alleged in the charging instrument.[17]

We granted the State's petition for discretionary review to address the following issue:

"Whether the manner of intoxication, either 'loss of faculties' or 'alcohol concentration,' is

---

[12]  *Id.*

[13]  *Id.* at 917.

[14]  *Id.*

[15]  *Id.* at 917-18.

[16]  221 S.W.3d at 918 (Horton, J., concurring).

[17]  *Id.*

an element of the offense of driving while intoxicated which must be alleged in the charging instrument[.]"

Before we address this particular issue, we provide a general overview of the law concerning notice and our most recent cases addressing notice in relation to the offense of DWI. And because the State's ground for review comes to us in light of our decision in *Gray*, we will also examine *Gray*'s discussion of the DWI statute.

### III. Law

**A. Notice**

The Texas and United States Constitutions grant a criminal defendant the right to fair notice of the specific charged offense.[18] "The charging instrument must convey sufficient notice to allow the accused to prepare a defense."[19] Toward that end, Chapter 21 of the Texas Code of Criminal Procedure governs charging instruments and provides legislative guidance concerning the requirements and adequacy of notice.[20] With respect to informations, Article 21.21 sets out what facts must be included in an information and states,

---

[18] *Lawrence v. State*, 240 S.W.3d 912, 916 (Tex. Crim. App. 2007) (citing U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *Ferguson v. State*, 622 S.W.2d 846, 849 (Tex. Crim. App. 1981) (opinion on reh'g)); TEX. CONST. art. V, § 12(b); *see also Cole v. Arkansas*, 333 U.S. 196, 201 (1948).

[19] *Curry v. State*, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000) (citing *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998)).

[20] *Moff v. State*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *Ferguson*, 622 S.W.2d at 849-50.

in part, "[t]hat the offense [must] be set forth in plain and intelligible words[.]"[21]

Additionally, an information must include everything that is necessary to be proved.[22] An

information is sufficient if it

> charges the commission of the offense in ordinary and concise language in
> such a manner as to enable a person of common understanding to know what
> is meant, and with that degree of certainty that will give the defendant notice
> of the particular offense with which he is charged, and enable the court, on
> conviction, to pronounce the proper judgment[.][23]

We have recognized that in most cases a charging instrument that tracks the statutory

text of an offense is sufficient to provide a defendant with adequate notice.[24] When a

statutory term or element is defined by statute, the charging instrument does not need to

allege the definition of the term or element.[25] Typically the definitions of terms and elements

---

[21] TEX. CODE CRIM. PROC. ANN. art. 21.21(7).

[22] TEX. CODE CRIM. PROC. ANN. art. 21.03; TEX. CODE CRIM. PROC. ANN. art. 21.23.

[23] TEX. CODE CRIM. PROC. ANN. art. 21.11; TEX. CODE CRIM. PROC. ANN. art. 21.23.

[24] *Lawrence*, 240 S.W.3d at 916 (citing *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998)); *Curry*, 30 S.W.3d at 398 (citing *Olurebi v. State*, 870 S.W.2d 58, 62 (Tex. Crim. App. 1994)); *Phillips v. State*, 597 S.W.2d 929, 934 (Tex. Crim. App. 1980) (citing *Parr v. State*, 575 S.W.2d 522, 526 (Tex. Crim. App. 1978); *Boney v. State*, 572 S.W.2d 529, 532 (Tex. Crim. App. 1978)).

[25] *Geter v. State*, 779 S.W.2d 403, 405 (Tex. Crim. App. 1989) (citing *Thomas v. State*, 621 S.W.2d 158, 161 (Tex. Crim. App. 1981); *May v. State*, 618 S.W.2d 333, 341 (Tex. Crim. App. 1981)).

are regarded as evidentiary matters.[26]  But in some cases, a charging instrument that tracks the statutory language may be insufficient to provide a defendant with adequate notice.[27] This is so when the statutory language fails to be completely descriptive.[28]  The statutory language is not completely descriptive "when the statutes define a term in such a way as to create several means of committing an offense, and the definition specifically concerns an act or omission on the part of the defendant."[29]  In such cases, "more particularity is required to provide notice."[30]  Thus, "if the prohibited conduct is statutorily defined to include more than one manner or means of commission, the State must, upon timely request, allege the particular manner or means it seeks to establish."[31]

On appeal, because the sufficiency of a charging instrument presents a question of law, an appellate court reviews a trial judge's decision to quash a charging instrument for failure to provide adequate notice *de novo*.[32]

---

[26]  *Marrs v. State*, 647 S.W.2d 286, 289 (Tex. Crim. App. 1983) (citing *Thomas*, 621 S.W.2d at 162); *see also Curry*, 30 S.W.3d at 398.

[27]  *Curry*, 30 S.W.3d at 398.

[28]  *Id.*

[29]  *Solis v. State*, 787 S.W.2d 388, 390 (Tex. Crim. App. 1990); *Geter*, 779 S.W.2d at 405 (citing *Ferguson*, 622 S.W.2d at 851).

[30]  *Id.*

[31]  *Saathoff v. State*, 891 S.W.2d 264, 266 (Tex. Crim. App. 1994) (citing *Ferguson*, 622 S.W.2d at 851).

[32]  *Moff*, 154 S.W.3d at 601.

**B. Notice and DWI**

*Garcia* and *Carter* are our two most recent cases addressing the issue of adequate notice under the DWI statute. In our 1988 decision in *Garcia*, we held that when a defendant is charged with DWI, in order to provide adequate notice, the State must allege the specific type of intoxicant(s) that the defendant allegedly used to become intoxicated.[33] In charging Garcia with DWI, the State alleged that Garcia "'did then and there drive and operate a motor vehicle in a public place . . . while intoxicated, when [he] did not have the normal use of his mental and physical faculties.'"[34]

In deciding that the specific type of intoxicant must be included in the charging instrument, we reasoned that the prohibited conduct of becoming intoxicated depends on an act or omission of the defendant and that such conduct, under the first definition for "intoxication," "can be accomplished in several different ways."[35] Continuing, we said that the type of intoxicant "becomes an element of the offense and critically necessary to the State's proof."[36] Concluding, we held that, because the State failed to allege the type of intoxicant, the charging instrument did not provide Garcia with adequate notice.[37]

Approximately three years later, examining the same statute in *Carter*, we built on

---

[33] 747 S.W.2d at 381.

[34] *Id.* at 380.

[35] *Id.* at 381.

[36] *Id.*

[37] *Id.*

*Garcia*'s holding and stated that, in addition to alleging the specific type of intoxicant, the State must also allege the definition of "intoxicated" that it intends to prove at trial to provide adequate notice.[38]   In making this determination, we concluded that the definitions of "intoxicated" describe two types of DWI offenses, a "loss of faculties" offense and a "per se offense."[39]  The "loss of faculties" offense, we said,

> may be established by proving the defendant drove or operated a motor vehicle in a public place while not having the normal use of his mental faculties, or while not having the normal use of his physical faculties, because of the introduction into his body of (1) alcohol; (2) a controlled substance; (3) a drug; or (4) a combination of two or more of those substances.[40]

In contrast, we said that the "per se" offense "may be established by proving the defendant drove or operated a motor vehicle in a public place while having an alcohol concentration of 0.10 or more in his blood, breath, or urine."[41]

Finally, recognizing *Garcia* and another case discussing notice, we then said that "given the fundamentally different natures" of the two offenses "and the different behaviors necessary to commit the two offenses," the State must allege the definition(s) of "intoxicated" that it intends to prove at trial.[42]  We then held that the information, which did not specify the type of intoxicant Carter allegedly used or the definition of "intoxicated" that

---

[38]  810 S.W.2d at 200.

[39]  *Id*.

[40]  *Id*.

[41]  *Id*.

[42]  *Id*. (citing *Garcia*, 747 S.W.2d at 381; *Solis*, 787 S.W.2d at 391).

the State would rely on at trial, did not provide Carter with adequate notice so he could prepare his defense.[43]

## C. *Gray v. State*

In *Gray*, in 2004, we repudiated our statement in *Garcia* that the specific type of intoxicant is an element of DWI. In that case, the State charged Gray with DWI, and the information alleged, in part, that Gray did not have the normal use of his mental and physical faculties due to the introduction of alcohol.[44] At trial, evidence was admitted establishing that Gray was taking several anti-depressant medications at the time of the offense.[45] A chemist testifying on behalf of the State stated that alcohol and anti-depressant drugs have the same depressant effect on the central nervous system and that when the two are used in combination with one another, it can result in what has been described as a "synergistic effect."[46] According to the chemist, the two medications can interact inappropriately: when used together either one may "accelerate the action of one medication."[47]

The trial judge's proposed charge instructed the jury that if the defendant indulges in the use of the anti-depressant medications and "thereby makes himself more susceptible to the influence of alcohol than he otherwise would have been, and by reason thereof becomes

---

[43] *Id.*

[44] 152 S.W.3d at 126.

[45] *Id.*

[46] *Id.*

[47] *Id.* at 127.

intoxicated from recent use of alcohol, he would be in the same position as though his intoxication was produced by the alcohol alone."[48] The judge's proposed application paragraph also instructed the jury to convict if it found that Gray was driving while intoxicated by reason of the introduction of alcohol into his body, either alone or in combination with anti-depressant medications.[49] Gray objected to the charge, arguing that it improperly expanded the scope of the of the State's allegation in the information because, under our decision in *Garcia*, the specific type of intoxicant alleged to have been used by the defendant is an element of the offense of DWI.[50] The trial judge overruled the objection, and Gray was subsequently found guilty and sentenced.[51]

Gray appealed, arguing that the jury charge, which instructed the jury on the "synergistic effect," was not part of the law applicable to the case.[52] The First Court of Appeals in Houston disagreed and affirmed the judgment of the trial court.[53] We granted review to decide whether the court of appeals "erred in holding that the instruction constituted the law applicable to the case when Gray was not charged with intoxication by

---

[48] *Id.*

[49] *Id.*

[50] *Gray*, 152 S.W.3d at 131.

[51] *Id.* at 127.

[52] *Id.*

[53] *Id.*

a combination of drugs and alcohol."[54]

We began by examining the DWI statute and, in particular, *Garcia*'s statement that the type of intoxicant is an element of DWI.[55] We observed that this statement was dicta because the issue in *Garcia* involved pleading notice requirements and was therefore unnecessary to the resolution of the case.[56] We then noted three "problems with the statement."[57]

"First, it contradicts the statutory definitions of what constitutes an element of the offense."[58] Section 1.07 defines the elements of the offense as "the forbidden conduct, the required culpability, the required result, and the negation of any exception to the offense."[59] The type of intoxicant does not constitute any of these, and "[t]he mere fact that the DWI statute separately defines intoxication does not automatically elevate the intoxicant to the status of an element of the offense."[60] Second, the statement conflicts with our caselaw;

---

[54] *Id.*

[55] *Id.* at 131.

[56] *Id.* at 132.

[57] *Id.*

[58] *Id.*

[59] *Id.* (citing TEX. PENAL CODE ANN. § 1.07(a)(22)).

[60] *Id.*

specifically, *Ex parte Luna*,[61] which addressed the essential elements of the theft statute.[62] There, we held that the definitions of "unlawfully" are not elements of the offense of theft but are evidentiary matters that do not need to be alleged in the charging instrument.[63] Comparing *Ex parte Luna*, we said that even though the DWI statute defines "intoxicated," this fact does not mean that the types of intoxicants are elements of DWI.[64] Third, it would be bad public policy to hold that the specific type of intoxicant is an element of DWI because a defendant could obtain an acquittal if the State, at trial, ultimately proves that the defendant used another type of intoxicant than the one alleged in the charging instrument.[65] The DWI statute, we observed, does not focus on the act of becoming intoxicated; it focuses on the act of the defendant while intoxicated.[66] Based on these considerations, we held that the type of intoxicant used by the defendant is not an element of DWI and "disavow[ed] the dicta in *Garcia* to the contrary."[67]

Examining the jury charge in Gray's case, we held that the "synergistic effect" instructions in the charge did not expand on the allegation in the information and therefore

---

[61]   784 S.W.2d 369 (Tex. Crim. App. 1990).

[62]   *Gray*, 152 S.W.3d at 132.

[63]   *Ex parte Luna*, 784 S.W.2d at 371.

[64]   *Gray*, 152 S.W.3d at 132.

[65]   *Id.*

[66]   *Id.*

[67]   *Id.*

properly applied the law to the facts of the case.[68]  We reasoned that the instructions "permitted the jury to convict if Gray's drug made him more susceptible to alcohol, but it still required intoxication due to alcohol."[69]

## IV.  Analysis

Reiterating the arguments it made before the trial judge and the court of appeals, the State contends that by explicitly disavowing *Garcia*'s reasoning in *Gray*, we necessarily undermined *Carter*'s holding that the State is required to allege the definition of "intoxicated" that it intends to rely on at trial.  The State asserts that a person's state of intoxication is not an act or omission; instead, it is the defendant's condition and a circumstance that accompanies the defendant's act of operating a motor vehicle.  In response, Barbernell argues that our decision in *Carter* is sound and has not been undermined by *Gray*.  Citing *Carter* as controlling precedent, Barbernell asserts that the court of appeals was correct in affirming the trial judge's ruling.

At the outset, we must make clear that our discussion about the elements of DWI in *Gray* had no impact on *Garcia*'s holding concerning the adequacy of notice.  We expressly made this point at the end of our opinion in *Gray* when responding to the State's request that we overrule *Garcia*'s notice holding: "Reaching out to address the validity of *Garcia*'s notice holding would be dicta.  And we have rejected this argument before.  We decline to consider

---

[68] *Id*. at 133.

[69] *Id*.

it today."[70]    Consequently, contrary to the State's argument, *Gray*'s discussion of the elements of DWI and renunciation of *Garcia*'s statement that the type of intoxicant is an additional element of the offense, while authoritative with respect to the elements of DWI, does not directly control the pleading notice issue before us.

In analyzing whether a charging instrument provides adequate notice, our notice jurisprudence makes clear that courts must engage in a two-step analysis. First, a court must identify the elements of an offense. As recognized in *Gray*, the elements, defined by the Legislature, include: the forbidden conduct, the required culpability, if any, any required result, and the negation of any exception to the offense.[71] Next, as to the second inquiry, when the Legislature has defined an element of the offense that describes an act or omission, a court must ask whether the definitions provide alternative manners or means in which the act or omission can be committed. If this second inquiry is answered in the affirmative, a charging instrument will supply adequate notice only if, in addition to setting out the elements of an offense, it also alleges the specific manner and means of commission that the State intends to rely on at trial. With these principles in mind, we find that it is necessary to revisit our analysis in *Carter*.

A careful review of our decision in *Carter* reveals that the Court's analysis was incorrect. First, although the Court, consistent with *Gray*, began by citing the elements of

---

[70]  152 S.W.3d at 134 (majority opinion), 136 (Cochran, J., dissenting).

[71] T  EX. PENAL CODE ANN. § 1.07(22).

DWI as those set out in Article 6701*l*-1(b) of the Texas Revised Civil Statutes, now codified in Section 49.04(a), Texas Penal Code, the Court ultimately held that by virtue of the definitions of the element "intoxicated," that there two separate DWI offenses—"loss of faculties" and "per se." The Court reached this conclusion based on its determination that the definitions of "intoxicated" permit the offense of DWI to be proven in two ways. Our reevaluation of this analysis exposes a serious defect in the Court's reasoning: After identifying the elements of DWI, the Court neglected to ask whether the definitions of "intoxicated" concern an act or omission so as to create more than one manner and means of committing an offense. Instead, without explanation, the Court decided that the two definitions of "intoxicated" each constitute separate acts or forbidden conduct. In doing so, the Court failed to reconcile this conclusion with its previous statement that the definitions of "intoxicated" involve only matters of proof. Then, expanding on its faulty determination, the *Carter* Court held that, because the two types of forbidden conduct involve "fundamentally different natures" and "different behaviors," a charging instrument must allege the definition of "intoxicated" that the State will seek to prove at trial.

The shortcomings of *Carter*'s constitutional analysis have not gone unnoticed by legal scholars. Criminal law experts Professors Dix and Dawson have criticized this opinion, stating that the Court "took considerable liberties with the concept of 'behavior' or conduct constituting an offense."[72] In their view,

---

[72] DIX & DAWSON, 41 TEXAS PRACTICE AND PROCEDURE § 20.314 (2nd ed. 2001).

[t]he State's choice between the methods of proving intoxication does not in any sense determine what acts, conduct or 'behavior' of the accused that the State will rely on. Rather, the choice concerns the type of evidence the State will rely upon to show particular conduct by the accused—'driving' or 'operating' a vehicle—performed while a particular circumstance—intoxication—existed.[73]

Having determined that *Carter*'s holding evolved from a flawed analysis, we now reevaluate the notice issue according to the dictates of our precedent. With the understanding that "intoxicated" is an element of DWI[74] and that Section 49.01(2) sets out two definitions for "intoxicated," we ask whether the definitions of "intoxicated" concern an act or omission and create two different manners and means of committing DWI. Our recent examination of the definitions of "intoxicated" in *Bagheri v. State*[75] leads us to conclude that the answer to this question is "no." Echoing the sentiments of Professors Dix and Dawson, in *Bagheri*, we held that the definitions "set forth alternative means by which the State may *prove* intoxication, rather than alternate means of *committing* the offense."[76] We then explained, "The conduct proscribed by the Penal Code is the act of driving while in a state of intoxication. That does not change whether the State uses the per se definition or the impairment definition to prove the offense."[77] These statements make clear that the

---

[73] *Id.*

[74] *Gray*, 152 S.W.3d at 131.

[75] 119 S.W.3d 755 (Tex. Crim. App. 2003)

[76] *Id.* at 762 (emphasis in original).

[77] *Id.*

definitions of "intoxicated" are purely evidentiary matters; therefore, they do not need to be alleged in a charging instrument to provide a defendant with sufficient notice. As a result, we overrule *Carter*'s holding that the State must allege the definition of "intoxicated" that it intends to rely on at trial in the charging instrument to provide adequate notice. A charging instrument that pleads the offense of DWI provides adequate notice when it sets out the elements of the offense as provided in Section 49.04.

Thus, in this case, the information, though it did not allege either definition of "intoxicated," provided Barbernell with adequate notice, and the court of appeals erred to conclude otherwise.

## V. Conclusion

After reevaluating our analysis in *Carter*, we hold that the definitions of "intoxicated" in Section 49.01(2) are evidentiary and therefore do not need to be alleged in a charging instrument. Therefore, a trial court should not quash a DWI information charging a defendant with DWI due to the State's failure to allege the definition of "intoxicated" that it intends to prove at trial. The judgment of the court of appeals is reversed and vacated, and the cause is remanded to the trial court.

DATE DELIVERED: July 2, 2008
PUBLISH