

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO.PD-0556-20

## PHI VAN DO, Appellant

## v.

## THE STATE OF TEXAS

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTEENTH COURT OF APPEALS
## HARRIS COUNTY

**NEWELL, J., filed a concurring opinion in which HERVEY, RICHARDSON and MCCLURE, JJ., joined.**

As I read the Court's opinion, the Court holds that the State did not "abandon" the "0.15 alcohol concentration" allegation in the information because the State did not take any affirmative action to do

so.  The other major issues—whether the "0.15 alcohol concentration" allegation is an element or an enhancement and what standard to apply when assessing the harm of having the trial court instead of a jury make a fact-finding at punishment—have been assumed away in an effort to reach a more focused and unified opinion.  While these issues will have to be decided in a later case, I join this aspect of the Court's opinion in the spirit in which these decisions are made.  I agree that if the allegation was an element, the failure to have a jury decide that aspect of the case was ultimately harmless.

But at some point, we need to decide whether the "0.15 alcohol concentration" allegation is an element or an enhancement.  Failing to do so puts practitioners in a real bind.  The State doesn't know whether to read the allegation to the jury during guilt, and the defense doesn't know whether to object to a lack of pronouncement of the allegation.  And how are the parties to advise a trial court when they regard the allegation as an element and the trial court regards it as an enhancement?  Leaving the issue undecided will only result in more confusion and conflicting holdings from the courts of appeals.

In this case, the State seems to have regarded the "0.15 alcohol concentration" allegation as an enhancement, at least at trial, while the defense regarded it as an element.  I disagree that there was any

surprise that the State was going to try to prove that Appellant's blood alcohol concentration was at least "0.15." The State alleged in the information not only the offense of driving while intoxicated, but also the higher amount of alcohol concentration set out in a separate paragraph including the wording "it is further alleged" commonly associated with sentence enhancements. Appellant was well aware of the breath test results, having filed objections to them prior to trial. Appellant chose to affirmatively waive his right to a jury trial on the issue of punishment prior to any alleged abandonment of the "0.15 alcohol concentration." And the breath test results were challenged primarily on the basis of an improper predicate, not that the results were scientifically reliable up to the "0.08" amount, but not up to the "0.15" amount. Neither party explicitly stated whether they regarded the allegation as an element or an enhancement until the punishment phase, but the parties at trial knew the score. If Appellant was challenging the difference between a "0.08 alcohol concentration" and a "0.15 alcohol concentration" he would have done so at the sentencing hearing, either as part of his objection or after it.

Nevertheless, if we had already decided that the "0.15 alcohol concentration" allegation was an enhancement, this case would be much easier. And there are strong arguments for that position. Generally,

our legislature's use of the phrase "if it is shown on the trial of . . . ." preceding an evidentiary requirement indicates a punishment enhancement.[1] We noted in *Oliva v. State*, that an exception to this rule is the use of a prior DWI conviction to enhance a driving while intoxicated offense to a third degree felony.[2] We reasoned that, consistent with our previous case law, a jurisdictional enhancement should be treated as an element of the offense because jurisdictional prior convictions are necessary to give a felony court jurisdiction.[3] And we noted that, in the context of a non-jurisdictional prior conviction, there are a number of factors, in addition to this statutory language, that suggest that the use of the phrase "if it is shown on the trial of" is a description of a punishment enhancement rather than an element of an offense.[4]

---

[1] *Oliva v. State*, 548 S.W.3d 518, 527 (Tex. Crim. App. 2018).

[2] *Id*. at 528.

[3] *Id.*

[4] *See id.* at 527–28. Contrary to the dissent's position in *Oliva*, we should hold that courts can only be sure that statutory terms following the phrase "a person commits an offense . . ." are elements of an offense. *See Wilson v. State*, 722 S.W.2d 118, 121–22 (Tex. Crim. App. 1989) ("This relatively simple statutory scheme is duplicated throughout the penal code and the Controlled Substances Act. That is, each time conduct is identified with the preliminary phrase 'A person commits an offense if …,' the attendant prohibition is indeed a separate and distinct offense as opposed to a punishment enhancing measure."). However, a statutory requirement that would otherwise appear to be a sentencing factor serves an additional purpose, such as establishing jurisdiction in a felony DWI. Only then should the Court say that the extra statutory requirement can be construed as an "element" of an offense. *Oliva*, 548 S.W.3d at 534.

Unlike a jurisdictional prior conviction, a defendant's alcohol concentration level is not an element of driving while intoxicated, it is a description of proof needed to establish "intoxication."[5] In *State v. Barbernell*, we explicitly rejected prior holdings that the different statutory definitions of intoxication are discrete elements of the offense of driving while intoxicated.[6] We had previously held in *State v. Carter* that the different definitions of "intoxication" described two different driving while intoxicated offenses, a "loss of faculties" offense and a "per se offense."[7] But we recognized in *Barbernell* that our reasoning in *Carter* was flawed.[8] We held instead that "intoxication" is an element of the offense of driving while intoxicated, and the definitions of intoxication set forth alternative ways of proving intoxication rather than different ways of committing the offense.[9]

The "0.15 alcohol concentration" provision is not jurisdictional like the prior convictions in a felony DWI.[10] Rather, it is an enhancement to

---

[5] *State v. Barbernell*, 257 S.W.3d 248, 256 (Tex. Crim. App. 2008).

[6] *Id*.

[7] *State v. Carter*, 810 S.W.2d 197, 200 (Tex. Crim. App. 1991).

[8] *Barbernell*, 257 S.W.3d at 255 ("A careful review of our decision in *Carter* reveals that the Court's analysis was incorrect.").

[9] *Id*. at 255–56.

[10] TEX. PENAL CODE ANN. § 49.04(d).

the element of intoxication. The State need not even plead any alcohol concentration in a misdemeanor information to set out the offense of driving while intoxicated.[11] Treating the "0.15 alcohol concentration" subsection as an element of the offense would resurrect *State v. Carter* and flies in the face of the Court's more recent determination in *Barbernell* that the different ways of proving "intoxication" are not elements of the offense of DWI.[12]

In that regard, the "0.15 alcohol concentration" provision is more akin to the "serious bodily injury" enhancement in *Wilson v. State*.[13] In that case, we held that a showing of "serious bodily injury" during the commission of a driving while intoxicated offense amounted to a punishment enhancement rather than an element of DWI.[14] The "0.15 alcohol concentration" provision works the same way. It is layered on top of a showing that a defendant drove while intoxicated, but it is not

---

[11] *See Barbernell*, 257 S.W.3d at 256 ("[T]he definitions of 'intoxicated' are purely evidentiary matters; therefore they do not need to be alleged in a charging instrument to provide a defendant with sufficient notice.").

[12] *See id.*

[13] *Wilson*, 722 S.W.2d at 118.

[14] *Id*. at 120.

necessary to show a particular alcohol concentration to establish the commission of a DWI.[15]

If the Court were to treat the "0.15 alcohol concentration" provision as an enhancement rather than an element, it would effectively resolve any future claims similar to the one presented in this case. The State's failure to read the enhancement provision at the outset of the guilt stage of the trial would not amount to error, and the defendant's punishment election would result in a waiver of his *Apprendi* claim. Nothing in the United States Supreme Court's *Apprendi* jurisprudence establishes *when* a jury must determine a fact that elevates the maximum punishment for an offense.[16] Further, the Supreme Court has recognized that a defendant can consent to a trial court's determination of an enhancing fact without running afoul of due process.[17] A defendant's choice to have a judge determine his sentence

---

[15] TEX. PENAL CODE ANN. § 49.04(a).

[16] *See*, *e.g.*, *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[17] *Blakely v. Washington*, 542 U.S. 296, 310 (2004) ("[N]othing prevents a defendant from waiving his *Apprendi* rights. . . Even a defendant who stands trial may consent to judicial factfinding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial.").

would also establish whether he could complain about the lack of a jury finding on a sentencing fact that elevates the range of punishment.[18]

But on the appeal of this case, the State and the defense have regarded the "0.15 alcohol concentration" provision as an element of the offense. While we are not bound by those concessions, the Court's decision to assume that the enhancement allegation at issue was actually an element of the offense makes sense in this context.[19] We have not yet determined that the "0.15 alcohol concentration" allegation is an enhancement rather than an element, so it would be unfair to apply that holding to the parties in this case. The more prudent course of action is the one the Court takes, to assume the existence of error at punishment and review the harm from that error under the least forgiving standard.

---

[18] *See Barrow v. State*, 207 S.W.3d 377, 379 (Tex. Crim. App. 2006) ("[T]he *Apprendi* line of cases requires that, *in any case in which the defendant has elected to exercise his Sixth Amendment right to a jury trial*, any discrete finding of fact that has the effect of increasing the maximum punishment that can be assessed must be made by the jury, even if that fact-finding occurs as part of the punishment determination.") (emphasis added); Dix & Schmolesky, 43A Tex. Prac., Crim. Practice and Procedure § 46:163 (3d Ed.) ("[I]n Texas, unlike in New Jersey and most other states, the availability at the option of the defendant of jury sentencing means that the Sixth Amendment right to a jury determination of any issue that increases the potential penalty is bypassed only by the choice of the defendant.").

[19] *See Oliva*, 548 S.W.3d at 520 ("We, of course, are not bound by any agreement or concessions by the parties on an issue of law.").

Even under that harm-standard, Appellant still cannot prevail on appeal because there was nothing in the record to suggest that the difference between an 0.15 alcohol concentration and an 0.08 alcohol concentration was an issue in this case.  To the extent that Appellant contested the breath test, it was to suggest that the breath test never established intoxication.  He did not present evidence or argue that his blood alcohol concentration was only above 0.08, but below 0.15.  When given the chance to do so at punishment, albeit to the trial court rather than the jury, he did not make the argument.  Consequently, I agree with the Court that even if we assume the level of alcohol concentration was an element of the offense, the failure to allow a jury rather than the judge to determine whether there was sufficient evidence to prove that it was at least 0.15 did not contribute to the conviction or punishment.

As for Appellant's reliance upon the dissenting opinion in *Niles v. State,* it is well-intentioned, but nonetheless misguided.  *Niles* only stands for the proposition that the failure to have a jury find a particular fact necessary to a particular punishment range is subject to a harm analysis, as is any other jury charge error.[20]  The Court based its holding upon binding United States Supreme Court precedent, and, to the extent

---

[20]  *Niles v State*, 555 S.W.3d 562, 569–73 (Tex. Crim. App. 2018).

that the Supreme Court dissenters within that precedent make persuasive arguments, the United States Supreme Court considered those arguments and rejected them in *Neder v. United States,*[21] *Washington v. Recuenco,*[22] and *Alleyne v. United States*[23].[24]  The United States Supreme Court has held that the type of error in *Niles* is not structural error; rather, it is subject to a harm analysis.[25]  *Niles* follows that precedent, and it is neither wrongly decided, nor has it proven unworkable.[26]

Indeed, if we are looking for precedent to blame, the focus on *Niles* obscures a different case that is both poorly reasoned and unworkable. And, as luck would have it, the case is the root cause of many problems

---

[21] 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed. 2d 35 (1999).

[22] 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006).

[23] 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013).

[24] **Error! Main Document Only.** *See*, *e.g.*, *Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 371, 110 S.Ct. 2430, 2440, 110 L.Ed.2d 332 (1990) (" . . . The Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source."); *State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998) ("When we decide cases involving the United States constitution, we are bound by United States Supreme Court case law interpreting it [.]"); *see also Apprendi*, 530 U.S. at 476–77, 120 S.Ct. 2348 ("At stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without 'due process of law,' Amdt. 14, and the guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury,' Amdt. 6.").

[25] *See Niles*, 555 S.W.3d at 571–72 (citing *Recuenco*, 548 U.S. at 218, 126 S.Ct. 2546; *Neder*, 527 U.S. at 8, 119 S.Ct. 1827).

[26] *See Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000).

associated with evaluating jury charge error on appeal. The real culprit behind the problems wrongly attributed to *Niles* is *Almanza v. State.*[27]

We were asked in *Almanza v. State* to determine what standards for jury charge harm were set out in Article 36.19 of the Code of Criminal Procedure. But in doing so, the Court took the extra step of tying those harm standards to the existence or non-existence of an objection. The text of Article 36.19 does not tie the harm standards in any way to the existence or non-existence of an objection.[28] Indeed, I can think of no other area of law in which a party's preservation of error dictates the character of the error at issue such that it changes the applicable standard of harm. The purpose of preservation of error is to alert a trial court and opposing party to the error at a time when it can be fixed.[29] Determining whether error is preserved isn't a determination that error

---

[27] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

[28] TEX. CODE CRIM. PROC. art. 36.19 ("Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.").

[29] *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("The two main purposes of requiring a specific objection are to inform the trial judge of the basis of the objection so that he has an opportunity to rule on it and to allow opposing counsel to remedy the error.").

exists or the character of any alleged error.[30]  Instead, reviewing courts rely upon the character of the right at issue to decide whether a complaint about the violation of that right must be preserved.[31]

Unfortunately, our decision in *Almanza* gets this backwards.[32] When we interpreted Article 36.19, we held that both the harm standard for ordinary reversible error and the harm standard for fundamental error were contained within the statutory terms.[33]  However, we went on to reason that because "ordinary reversible error" requires an objection before it can be considered on appeal, the mere existence of

---

[30] *Posey v. State*, 966 S.W.3d 57, 61 (Tex. Crim. App. 1998) ("When, under general rules of procedural default, an appellate court holds a defendant has procedurally defaulted a particular claim by not timely raising it in the trial court, the appellate court does not concede "error" has occurred.  In these situations, all the appellate court is saying is that it will not address the merits of a claim raised for the first time on appeal.").

[31] *Marin v. State*, 851 S.W.3d 275, 279 (Tex. Crim. App. 1993) (setting out three categories of "rights" to explain when preservation of error is required to complain about a violation on appeal).

[32] *Almanza*, 686 S.W.2d at 171 ("If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than that there must be some harm to the accused from the error. [. . . ] On the other hand, if no proper objection was made at trial and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'").

[33] *Id*. at 171 ("[W]e have concluded that Article 36.19 actually separately contains the standards for *both* fundamental error and ordinary reversible error.").

an objection determined the standard for harm.[34]  But this conclusion does not logically follow from the text of the statute.[35]

The problems with tying the standard of harm to the existence or non-existence of an objection should be obvious.  It necessarily leads to situations in which a constitutional violation is held to a more forgiving standard of harm by virtue of a defendant's lack of objection.[36]  Conversely, an objection to jury charge error could result in holding a mere statutory violation to the standard of constitutional error simply because trial counsel spoke up at the charge conference.[37]  The proper analysis should keep these two inquiries separate.  Reviewing courts should determine the character of the error and whether that error requires an objection in the trial court in order for a party to raise a complaint about that error on appeal.  From that determination, a reviewing court can determine which standard of harm applies to the type of error at issue.  But at no point would the preservation of a

---

[34] *See id.*

[35] *See* TEX. CODE CRIM. PROC. art. 36.19.

[36] *See Almanza*, 686 S.W.2d at 171 ("[I]f no proper objection was made at trial and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial"— in short 'egregious harm.'").

[37] *Id*. ("If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than that there must be some harm to the accused from the error.").

particular complaint determine the character of the error at issue and, by extension, the standard of harm associated with that error.

Again, despite the gnashing of teeth and rending of garments, *Niles* only recognized, consistent with binding United States Supreme Court precedent, that the lack of a jury finding on a particular fact question is subject to a harm analysis.[38]  And, given that *Apprendi* error dealing with the lack of such a necessary finding is subject to a defendant's consent, *Niles* is consistent with our precedent that a waivable only right can be raised for the first time on appeal even without an objection.[39]  But, to the extent that the complaint about *Niles* is that it would require a defendant to object at trial to secure a particular type of harm analysis on appeal, *Niles* does not create the problem, *Almanza* does.  If there is a case to dispatch, it's *Almanza*.

With these thoughts, I join the Court's opinion.

Filed: September 29, 2021

Publish

---

[38] *Niles*, 555 S.W.3d at 573.

[39] *See Marin*, 851 S.W.2d at 280. (failure of the trial court to implement waivable rights "is an error which might be urged on appeal whether or not it was first urged in the trial court").