

**NUMBER 13-22-00448-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**AMANDA NICHOLE GUIDRY**
**A/K/A AMANDA GUIDRY,**                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                          **Appellee.**

---

**On appeal from the 356th District Court of**
**Hardin County, Texas.**

---

**MEMORANDUM OPINION**

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Chief Justice Contreras**

Appellant Amanda Nichole Guidry a/k/a Amanda Guidry was convicted of causing serious bodily injury to a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.04(a). The jury assessed punishment at eighty years' confinement. By her sole issue, Guidry contends the trial court erred by denying her pretrial motion to quash the

indictment charging her with capital murder of a child younger than six years of age.[1] *See* Act of May 28, 1993, 73rd Leg., R.S., ch. 887, § 1, 1993 Tex. Gen. Laws 3529 (current version at TEX. PENAL CODE ANN. § 19.03(a)(8)). We affirm.

## I. BACKGROUND[2]

Guidry moved in with her then-boyfriend, Jason Delacerda, around December 2010. Her four-year-old daughter, B.L.,[3] who had been living with Guidry's mother, moved in with Guidry and Delacerda about two weeks later. On August 17, 2011, paramedics were dispatched to Delacerda's residence in response to a 9-1-1 call. Guidry told the dispatcher that her daughter was not breathing. Delacerda then explained to the dispatcher that B.L. was recovering from a broken leg and head injury she sustained previously, but she seemed to have had a seizure.

Paramedic Cassandra Walters was the first medical professional on scene. Walters testified that B.L. was not breathing and her skin looked pale and blueish when she arrived. She performed CPR and administered an IV and epinephrine to try to start B.L.'s heart. Walters said that she noticed a lot of injuries on B.L.'s body that seemed inconsistent with merely having a seizure. She saw burns on B.L.'s body, including on her foot, upper thigh, temple, and chest. She also noticed B.L. had a broken rib and one of

---

[1] In 2011, the legislature amended the offense to apply to a child younger than ten years of age. Act of May 29, 2011, 82nd Leg., R.S., ch. 1209, § 1, 2011 Tex. Gen. Laws 3235–36 (amended 2019, 2023) (current version at TEX. PENAL CODE ANN. § 19.03(a)(8)). The amendment applies only to offenses committed on or after September 1, 2011. *Id.* §§ 2, 3. Accordingly, the previous version of the statute applies in this case.

[2] This appeal was transferred to this Court from the Ninth Court of Appeals in Beaumont by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

[3] To protect the identity of the minor child we refer to her by her initials. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process").

her legs was not "shaped right." Other paramedics arrived and transported B.L. to the hospital.

B.L. was taken to St. Elizabeth Hospital in Beaumont and was pronounced dead on arrival. Dr. Charles Owen assessed B.L.'s body to determine the cause of her death. He testified that the burns on her body were in various stages of healing and were "all in the context of repeated trauma, intermittent periods of healing, followed by subsequent trauma." Dr. Owen also assessed other injuries on her body, including prominent and extensive bruising on her buttocks and genital region; extensive bruising on the right side of her face; and various abrasions around her facial features. He identified the bruises on her bottom and genital area as the result of "paddling or striking with an object" over a period of time and on "multiple different occasions." From her wounds, he concluded that she had been tortured. Another doctor, Dr. Tommy Brown, testified that B.L.'s ultimate cause of death was "nonaccidental injury with blunt force trauma to the head."

Guidry testified at trial. She explained that she never left Delacerda because he physically, sexually, and emotionally abused her. He would often take away her phone and threaten to harm her and her family to prevent her from leaving him. He also lied about abusing B.L. and tried to hide her injuries from her. For example, B.L. suffered a broken leg and Delacerda claimed it was from her falling off the trampoline. Another time, Guidry noticed bruising or "swelling" on B.L.'s head after she got home from work. Delacerda told Guidry that the swelling was from B.L. slipping on her cast and hitting her head. She testified that she asked B.L. about her injuries and if she was "okay" living with Delacerda, but B.L. always responded that she was fine. At some point, Guidry believed the injuries were not accidents, but she felt powerless to leave.

3

Delacerda was convicted of capital murder of a child younger than six years of age and sentenced to the death penalty.[4] Guidry was charged separately and was indicted with the same offense. *See id.* The indictment alleged that Guidry, on or about August 17, 2011, "did intentionally or knowingly cause the death of an individual, namely [B.L.], a child younger than six years of age."

Prior to trial, Guidry's trial counsel filed a motion to quash the indictment, claiming it was defective for failing to state the manner and means by which she caused B.L.'s death. Her trial counsel argued that, without the manner and means of B.L.'s death, the indictment did not give proper notice of the charge. The State responded that the indictment was sufficient because it alleged the elements of the offense and did not need to specify the manner and means used to commit the murder. The State also argued that, regardless, the defense had sufficient actual notice of the offense charged because Guidry's case had been pending for eleven years and the State tendered all evidence to the defense years before trial, including "the forensic report from [B.L.'s] autopsy; all medical records; [and] every video, including both [of Guidry's] interviews, as well as Jason Delacerda's interviews." The trial court denied the motion.

The jurors were instructed that they could find Guidry guilty, as either a principal or party, of the charged offense of capital murder or the lesser included offense of causing serious bodily injury to a child. The jurors found Guidry guilty of the lesser included offense and assessed her punishment as referenced above. The court sentenced Guidry in accordance with the jury's verdict. This appeal followed.

---

[4] *See Delacerda v. State*, No. AP-77,078, 2021 WL 2674501 (Tex. Crim. App. June 30, 2021), (mem. op., not designated for publication).

4

## II.    DISCUSSION

## A.    Standard of Review & Applicable Law

The sufficiency of an indictment presents a question of law. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). We therefore review the denial of a motion to quash de novo. *Id.*; *see State v. Zuniga*, 512 S.W.3d 902, 906 (Tex. Crim. App. 2017).

The Texas and United States Constitutions grant a criminal defendant the right to fair notice of the specific charged offense. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10; *Lawrence v. State*, 240 S.W.3d 912, 916 (Tex. Crim. App. 2007). To meet an accused's right to notice under both the Texas and United States Constitutions, the indictment "must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense." *Moff*, 154 S.W.3d at 601. In most cases, a charging instrument that tracks the statutory text of an offense is sufficient to provide a defendant with adequate notice. *State v. Barbernell*, 257 S.W.3d 248, 251 (Tex. Crim. App. 2008). But in some cases, such as "when the statutory language fails to be completely descriptive" or "when a statute defines the manner or means of commission in several alternative ways," a charging instrument that tracks the statutory language may be insufficient to provide a defendant with adequate notice. *Zuniga*, 512 S.W.3d at 907; *Barbernell*, 257 S.W.3d at 251.

To determine whether an indictment provides adequate notice to the defendant, we (1) identify the elements of the offense, and (2) consider whether the statutory language is sufficiently descriptive of the charged offense. *See Zuniga*, 512 S.W.3d at 907. If the indictment contained a defect, we will not overturn the trial court's decision unless the defendant's substantial rights were prejudiced by the defect. TEX. CODE CRIM.

PROC. ANN art. 21.19 ("An indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant."); *Popp v. State*, 634 S.W.3d 375, 384 (Tex. App.—El Paso 2021, pet. ref'd) (citing *Teal v. State*, 230 S.W.3d 172, 182 (Tex. Crim. App. 2007)).

Under the version of the statute applicable in this case, a person commits capital murder if they intentionally or knowingly cause the death of an individual under six years of age. Act of May 28, 1993, 73rd Leg., R.S., ch. 887, § 1, 1993 Tex. Gen. Laws 3529 (amended 2011). A person commits injury to a child if he or she "intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child . . . (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury." TEX. PENAL CODE ANN. § 22.04(a).

## B.  Analysis

Guidry argues that the trial court erred in denying her pretrial motion to quash the indictment, contending that the indictment failed to properly allege the manner and means of B.L.'s death and "thereby failing to provide her with sufficient notice of the charged offense." Specifically, Guidry argues the indictment should have included "by blunt force trauma to the head," and without it, she had insufficient notice of the element of causation.

Guidry does not cite any authority that supports the proposition that the manner and means must be included in a capital murder indictment in order to provide a defendant with adequate notice.[5] The capital murder indictment in this case clearly tracks the

---

[5] Guidry cites *Sanchez v. State*, 376 S.W.3d 767 (Tex. Crim. App. 2012). However, in that case, the high court was reviewing jury charge instructions, not an indictment. *See id.* at 773 n.5 ("Nothing in this opinion affects the law for adequacy of indictments, motions to quash, or the notice to which a defendant may be entitled."). Therefore, we do not find the case instructive.

6

statutory text, and an indictment that tracks the statutory text of an offense is generally sufficient to provide a defendant with adequate notice. *See Zuniga*, 512 S.W.3d at 907; *Barbernell*, 257 S.W.3d at 251. Furthermore, the Texas Court of Criminal Appeals has specifically held that an indictment for murder need not allege the "manner and means used to commit the murder" to be sufficient. *Bowen v. State*, 640 S.W.2d 929, 930–31 (Tex. Crim. App. [Panel Op.] 1982); *see Popp*, 634 S.W.3d at 386 ("[I]t is well settled that an indictment need not allege the facts which make a defendant a party to the offense and criminally responsible for the conduct of another before the jury can be instructed it can convict on that basis."); *Tata v. State*, 446 S.W.3d 456, 463 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *see also Lyons v. State*, No. 03-12-00474-CR, 2015 WL 895343, at *6 n.24 (Tex. App.—Austin Feb. 26, 2015, pet. ref'd) (mem. op, not designated for publication) (noting that the appellant's reliance on older Texas Criminal Court of Appeals cases for the notion "that an indictment for murder must allege the means used to cause death" is questionable "in light of modern, more relaxed pleading practices").

Nonetheless, even assuming without deciding that the language in the indictment was insufficient because it failed to specify the manner and means, Guidry had adequate notice of the capital murder charge. *Chambers v. State*, 866 S.W.2d 9, 17 (Tex. Crim. App. 1993) (assuming without deciding that "failure to specify the manner and means of strangulation was error" but finding appellant nevertheless had adequate notice for the manner and means of victim's death through record evidence of his confession to police); *Popp*, 634 S.W.3d at 389–90 (holding the appellant's substantial rights were not prejudiced because the record illustrated the appellant had adequate notice of the State's theory of party culpability). The parties agreed at appellant's pretrial motion to quash that

7

Guidry's case had been pending since 2011. Guidry's trial counsel also agreed that all the discovery for the case had been provided, and that it was largely the exact same evidence and witnesses from the trial of Delacerda, who was charged and convicted of capital murder. This evidence included B.L.'s medical records and autopsy report, which listed her injuries and her cause of death as blunt force trauma to the head.

Moreover, even if an indictment is defective for failing to allege the specific theories of culpability on which the jury was charged, a defendant's substantial rights are not prejudiced if the record does not show that an alternative defense was available to the defendant. *Popp*, 634 S.W.3d at 390. Here, the record does not suggest an alternative defense available to Guidry if the specific manner and means of B.L.'s death had been alleged in the indictment, nor does Guidry explain how her defense would have changed if the phrase "by blunt force trauma to the head" had been included in the indictment. *See id.* Finally, and most importantly, Guidry also does not explain how she was harmed for an allegedly insufficient indictment for capital murder when she was ultimately convicted of the lesser-included offense, injury of a child. Indeed, Guidry's trial counsel admitted that Guidry was "criminally negligent" and she "failed to act" during his closing argument, arguing that the jury consider the offense of injury of a child instead.

In sum, the record indicates Guidry's trial counsel had adequate notice of the offense the State intended to prove at trial. We conclude that the omission of the manner and means of B.L.'s murder in the indictment was not error and, in any event, did not have a deleterious impact on appellant's ability to prepare her defense. We overrule Guidry's sole issue.

8

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
21st day of December, 2023.